## WILLIAMS & MILLER GIN CO. v. KNUT-SON et ux.

### No. 4062.

Court of Civil Appeals of Texas. Amarillo. Sept. 27, 1933.

Forrester & Adkins, of Wheeler, for plaintiff in error.

Reynolds & Heare, of Shamrock, for defendants in error.

JACKSON, Justice.

This suit was instituted by Williams & Miller Gin Company, a corporation, against W. C. Knutson and wife Annette Knutson, to recover the sum of $2,000, with interest thereon at the rate of 10 per cent. per annum, and attorney's fees, evidenced by a note dated August 21, 1928, and payable at Shamrock, Tex., on August 21, 1929. The plaintiff also sought to foreclose a lien, on certain lots, executed contemporaneously with the note, to secure the payment thereof.

The defendants answered, admitted the execution of the note and deed of trust, interposed the defense of homestead against the lien, claimed that while the note was made payable to the Williams & Miller Gin Company it should have been made payable to Williams & Knutson Gin Company.

By permission of the court the plaintiff filed a trial amendment, alleging that the note had been made payable to plaintiff by mistake, but that on or about the 21st day of August, 1931, it was in due course of trade transferred to the plaintiff in a settlement had by the two corporations.

The defendants pleaded as a defense to the note that W. C. Knutson was a director, the manager of, and owned thirty shares of the capital stock in the Williams & Knutson Gin Company, a Texas corporation, of the face value of $3,000. That Sam Williams, the president of the corporation, was greatly displeased with the services of said defendant and set about to discharge him from any connection therewith. That in the settlement of their difficulties, "said corporation by and through its president Sam Williams, and this defendant W. C. Knutson, entered into an adjustment, compromise and settlement of said differences and then and there agreed that the defendant W. C. Knutson transfer and part with his said $3,000.00 worth of stock in said corporation and deliver certain of said accounts to said corporation and deliver to said corporation the cash on hand and in the banks, aggregating as aforesaid the sum of $358.99, and that in turn the said corporation transfer to W. C. Knutson without recourse the notes and accounts receivable that were due prior to August 1, 1931, and agreed to cancel, release and deliver to the defendant W. C. Knutson the note that plaintiff sues on herein, together with the purported deed of trust securing said note and pay to the said W. C. Knutson the sum of $100.00 in cash." That the settlement and compromise was consummated and carried out, except that the plaintiff failed and refused to cancel and deliver the note and deed of trust on which recovery is sought. That by reason of such agreement, the note had been fully paid, satisfied, and discharged. The plaintiff concedes that the testimony showed that the lien was given against the homestead of the defendants, and abandoned the foreclosure thereof.

The court submitted this issue to the jury, "Do you find from a preponderance of the evidence that in the settlement between Williams & Knutson Gin Company and W. C. Knutson on August 21, 1931, Sam Williams, the President of the Williams & Knutson Gin Company, agreed as a part of said settlement that the $2,000.00 note in question in this case should be cancelled?" to which the jury answered "Yes."

On this verdict judgment was rendered in favor of defendants canceling the note, and the plaintiff, by writ of error, prosecutes this appeal and urges that under the pleading and testimony the court should have directed a verdict in its behalf and entered judgment against W. C. Knutson for the note, with interest, attorney's fees and costs.

The record discloses that the Williams & Miller Gin Company was duly and legally incorporated under the laws of the state of Oklahoma, and had a permit to do business in Texas. The Williams & Knutson Gin Company was duly incorporated under and by virtue of the laws of Texas. Said Texas corporation operated on its property, in addition to the gin, a filling station and car service business, both of which were in charge and control of W. C. Knutson. Sam Williams was the president of each of said corporations. At a meeting properly called, all the stockholders of the Texas corporation met at its place of business in Shamrock on August 21, 1931, at which meeting resolutions were properly adopted and placed on the minutes of said corporation, by the terms of which and for the consideration therein recited the Oklahoma Corporation agreed to buy, and the Texas Corporation agreed to sell, all of its property, real, personal and mixed.

On the same day a written contract was entered into by and between said two corporations as first parties and W. C. Knutson as second party, by which he sold to them his capital stock, delivered to them the cash he had in his possession and in the bank, and received certain "service station notes and accounts receivable due" the Texas corporation and $100 in cash which he accepted for all salary, wages, services, or claims of any and all kinds whatever that he had against the first parties. The note in controversy is not mentioned in said contract.

The testimony shows without contradiction that Mr. Knutson, while manager, had withdrawn $2,000 in money from the Texas corporation and expended it on improvements on his home, and the note sued on was executed for the money so withdrawn.

Mr. Knutson testified in support of his plea of payment that on August 21, 1931, he discussed the $2,000 note with Sam Williams; that Mr. Williams said to him, "It seems like you and the boys can't get along together" and "we will just cancel out everything and just forget it." "Mr. Sam said he would cancel the note and send it to me"—"Just agreed to take care of my indebtedness and square off." That the note was not discussed generally, but was wholly a private conversation between him and Sam Williams. While Mr. Knutson was testifying his counsel asked:

"Q. On the day you made this settlement, did Sam Williams, in discussing the surrender of this deed of trust and note in that settlement, did he state as to whether or not —as to whether he made any statement to you about bringing that up inside among the others?" A. He did.

"Q. What reason did he give? A. He said: 'Billy, we want to get along in the gin business here. Don't want to have any mud slinging and want to be friends hereafter and want to settle this in a business way and the best way for both of us.

"Q. With reference to not bringing up this note that is sued on and this deed of trust in the presence of these other stockholders, did he say anything about that? A. Yes, sir, he says 'We will just forget it and I will cancel your note and send it to you.'"

■ The appellees did not plead that the president had express or apparent authority to bind the corporation in the cancellation of the note. If it be conceded that the testimony presents an issue as to the apparent authority of the president to act for the corporation, such authority is clearly limited to transactions ordinarily incident to the operation of the business.

■ In order for a director of a corporation to make a binding contract therewith, it is essential that he act in good faith, the contract be authorized by a quorum of the disinterested members of the board with knowledge of all the material facts pertaining to the transaction, and generally that the transaction be beneficial to the corporation. 10 Tex. Jur. 957, § 306; McLendon Hardware Co. v. Black (Tex. Civ. App.) 264 S. W. 1011.

■ Mr. Knutson was a director in the corporation, and Mr. Williams, the president thereof, could not make a private agreement with him to cancel the note and bind the corporation by such agreement.

Fletcher on Corporations, vol. 3, page 1327, § 2053, is: "The president of a corporation has no implied authority, merely by virtue of his office, to surrender rights of the corporation; nor can he do so, even when he has the management and general control of the corporation, except for a consideration and in the usual course of business. Thus it has been held that he has no authority to release valid claims in favor of the corporation, to surrender a note in favor of the corporation, or bind the corporation by an agreement that the maker shall not be held liable thereon, to release sureties, or agree that they shall not be held liable, to bind the corporation by an agreement that an indorser on a note discounted by it shall not be held liable, to release subscribers for stock from liability on their subscriptions, to discharge a mortgage in favor of the corporation, or to renounce a tax levied in its favor by the state or a municipality, or to bind the corporation by an agreement not to plead the statute of limitations. So he cannot release a claim against

a stockholder in consideration of the latter releasing his claims to a part of the surplus in the hands of the corporation, since an individual stockholder has no claim to a surplus until a dividend is declared."

██ Appellees contend that under the law the validity of the agreement canceling the note could not be questioned by appellant in this case, because it was not a party to it, but was a stranger to such contract.

Appellees cannot invoke this principle, because their defense is based on the contention that the corporation, acting by and through its president, was a party to and bound by the agreement to release and cancel the note. Obviously, if appellant was not a party to such agreement, appellees could not urge the agreement as a defense to the payment of the note. The fact that the appellant acquired this note after maturity would not defeat its right to the collection thereof, because of the unestablished plea of payment and cancellation urged by appellees.

Appellees appearing to have fully developed the facts of their defense, and such facts as a matter of law having failed to establish such defense, the judgment is reversed and here rendered that appellant recover against W. C. Knutson the $2,000 evidenced by the note, with interest and attorney's fees as therein provided, together with costs.