EVERETT DUNAGAN V. C. W. BUSHEY ET AL.

No. A-4230. Decided December 2, 1953.
(263 S. W. 2d Series 148)

632

*Merrill & Scott* and *Sam R. Merrill,* all of Houston, for petitioner.

The Court of Civil Appeals erred in holding that the trial court committed no error in withdrawing the case from the jury and rendering judgment against plaintiff, Dunagan, in favor of all defendants, and in failing to render judgment for plaintiff on his alternative plea for judgment against the individual respondents for the amount of his stock with interest. Baldwin v. Johnson, 95 Texas 85,65 S.W. 171; Pratt-Hewett Oil Co. v. Hewett, 122 Texas 38, 52 S.W. 2d 64; Ama-Gray Oil Co. v. Marshall, 212 S.W. 2d 960.

*George W. Eddy,* of Houston, for Bushey, White and Hill, *Boyles & Billingsley* and *M.U.S. Kjorlaug,* for First National Bank in Houston, Respondents.

When no findings of fact have been requested or filed an appellate court must assume that trial court correctly found all fact issues having support in the evidence in favor of the judgment rendered. Bednarz v. State, 142 Texas 138, 176 S.W. 2d 562; Waters v. Yockey, 144 Texas 592, 192 S.W. 2d 769.

A stockholder cannot sue in his own behalf for damages from alleged wrongs to the corporation, even though said alleged wrongful acts caused his stock to become worthless. Commonwealth of Mass. v. Davis, 140 Texas 398, 168 S.W. 2d 216.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a suit brought by petitioner, Dunagan, against respondents, C. W. Bushey, J. B. White and Harry L. Hill, and the First National Bank in Houston, Texas, for damages to Dunagan, individually and as a representative of the stockholders of Tem-Trol, Inc., a Texas corporation. The facts are as follows: Some time prior to April 1, 1948, Bushey and White and Hill were desirous of organizing a corporation to buy and sell goods, wares and merchandise having to do with the sale of refrigeration equipment and supplies. White approached Dunagan for the purpose of securing Dunagan to become one of the incorporators of Tem-Trol, Inc., but Dunagan refused to subscribe to any stock until the corporation should be chartered. In order to secure a charter Bushey, White and Hill formed a plan whereby they would subscribe for the $35,000.00 capital stock of Tem-Trol, Inc., and would pay in the sum of $18,000.00 cash on their stock subscription. The money was to be procured by the three incorporators through a loan for said sum. As soon as the charter had been secured the incorporators, who were named as all the directors for the corporation in the charter application, would return all their stock to the corporation, draw down the $18,000.00 cash and use the money to repay their note to the party lending them the $18,000.00. To procure funds with which to operate the corporation, they would sell the corporate stock to outside investors. Dunagan denies knowledge of this plan, but White and Bushey claim he knew about the details of the same. In order to obtain the $18,000.00 White and Bushey approached an officer of the First National Bank in Houston, and explained to such officer that they needed the $18,000.00 in order to secure a charter for Tem-Trol, Inc. They

also informed this officer of the Bank that they proposed to repay the loan by selling to the corporation, after its organization, certain properties and a franchise for the sum of $18,000.00 and then repay the loan. The Bank made a loan for $18,000.00 to White, Bushey and Hill, individually, and each one signed the note to the Bank. On March 30, 1948 the Bank passed the $18,000.00 to the credit of Tem-Trol, Inc., and issued a deposit slip on a regular form showing this credit. This deposit slip delivered to White, et al for use in securing the charter had thereon "Duplicate. First National Bank, Houston, Texas. W. M. Note Teller" and was presented to the Secretary of State with the charter application. Upon such application with the deposit slip attached, and the usual accompanying affidavit of Bushey, White and Hill that all of the $35,000.00 capital stock had been subscribed, and $18,000.00 paid in cash, the Secretary of State approved the application and issued the charter on April 1, 1948. On April 1, 1948, Bushey called Dunagan on the telephone and informed him that White was in Austin presenting the charter application and would secure the charter and called upon Dunagan for the $5,000.00 in payment for the stock in Tem-Trol, Inc. which Dunagan had agreed to purchase as soon as a charter had been secured. Bushey also told Dunagan the money was needed to pay for a carload of refrigeration equipment and machinery which was on the railroad track there in Houston, with the bill of lading attached to a draft for the purchase price of such equipment. The evidence shows this draft was in the amount of approximately $11,000.00. Dunagan gave two checks payable to Bushey in a total sum of $5,000.00 for stock in the corporation, which stock was represented as belonging to Bushey, White and Hill. No stock was ever issued to Dunagan. Other stock was sold to other parties at various dates. A Mrs. Petitt also paid in $1,000.00 for stock on April 1, 1948.

On April 8, 1948, White, Bushey and Hill, as directors of Tem-Trol, Inc., at a special called meeting, passed a resolution selecting The First National Bank of Houston, Harris County, Texas, as depository for the corporation, and passed a further resolution "that all funds withdrawn from said bank shall be done by check or checks signed by C. W. Bushey and J. B. White". On April 9, 1948, White and Bushey drew a check on the Tem-Trol, Inc. account in the Bank in the sum of $18,025.00 (the $25.00 being for interest on the $18,000.00) and payable to J. B. White and C. W. Bushey. This check was endorsed by White and Bushey and delivered to the Bank, and accepted by

the Bank in payment of the loan for $18,000.00 made to White, Bushey and Hill on March 30, 1948, plus $25.00 interest. Their note stamped "Paid" with a bank stamp used for such purpose was returned to White, et al.

Also on April 9, 1948, Bushey paid the draft against the bill of lading for the car of equipment and supplies and secured the delivery of the car to Tem-Trol, Inc. He testified that he used Dunagan's $5,000.00, Mrs. Petitt's $1,000.00 and about $4,500.00 of his own money, which was later repaid to him by Tem-Trol, Inc. Between April 9th and April 26th, 1948, (the date of a stockholders' meeting) White, Bushey, and Hill and their agents had sold stock to some fourteen other persons than Mrs. Petitt and Dunagan. The meeting of stockholders of Tem-Trol, Inc. was called for April 26, 1948 at the place of business of said corporation. At 10:00 a. m., April 26, 1948, White, Bushey and Hill, purporting to be "all of the incorporators of Tem-Trol, Inc. and all of the subscribers to its capital stock entitled to notice of said meeting" had an organization meeting and passed a resolution whereby "it was unanimously voted that all subscribed capital stock be returned to the company". No one else participated in this first meeting, although it was held in the same room where Dunagan, W. D. Petitt, and W. R. Freeman (purchasers of stock) were present. At 10:30 a. m. of the same date in the same room and with White, Bushey, Hill, Dunagan, Petitt and Freeman present, was held what purports to be "a meeting of the stockholders thereof (Tem-Trol, Inc.) * * * for organization of said corporation, the election of directors and the transaction of such other business as may properly come before said meeting". At this meeting the six persons last above named were elected directors, by-laws were "accepted"; J. B. White was elected chairman, and E. D. Dunagan, Secretary. Immediately following this stockholders' meeting, at which the directors were elected, was held a directors' meeting at 11:00 a. m. of the same day. At this meeting the First National Bank was selected as depository of the corporation and C. W. Bushey and J. B. White were directed to sign all checks. "It was voted to pay C. W. Bushey and J. B. White $7,500.00 in capital stock for the franchise of Frigid-Freeze and notes would be given for an additional $6,500.00 of capital stock. Said notes to be paid on or before two years". On this motion Bushey and White did not vote. Bushey, White and Hill testified that they never paid to the corporation one dollar on their stock subscriptions except the $18,000.00 they individually borrowed, and that they had never been called upon by the corporation to pay for the stock sub-

scribed. It was their plan to finance the corporation through sales of the capital stock—all of which they had voted to turn back to the corporation. The evidence reflects that Tem-Trol, Inc. did not have sufficient funds to operate its business after the $18,000.00 was withdrawn by Bushey, White and Hill and paid the Bank in satisfaction of their individual note. Bushey testified that between April 1 and December 17, 1948, (when the corporation ceased to do business) he, or a corporation named Better Built Equipment Company, advanced to Tem-Trol, Inc. a total of $19,243.31, of which there was repaid by Tem-Trol, Inc. all but about $1,200.00. The record further shows that Tem-Trol, Inc. never received a franchise from the Frigid-Freeze people. Trial was before a jury, but at the end of the evidence the trial court "took the case from the jury and discharged the jurors and proceeded to render judgment for defendants herein". On appeal this judgment of the trial court was affirmed. 257 S.W. 2d 822. We granted a writ of error and the cause has been duly argued and submitted.

■ Respondents contend that petitioner has no right to maintain this suit on behalf of the corporation, or individually. The record herein shows that prior to entry of judgment by the trial court, the State, through its Attorney General, had secured a judgment forfeiting the charter of Tem-Trol, Inc. for failure to make payment of its franchise tax for the year 1949. This fact Dunagan pled in an amended original petition. Where the charter of a corporation has been forfeited, such corporation may not sue, but the stockholders of such corporation "* * * may prosecute or defend such actions in the courts as may be necessary to protect their property rights". Humble Oil & Refining Co. v. Blankenburg, 149 Texas 498, 235 S.W. 2d 891, 894 (3,4); Pratt-Hewit Oil Corporation v. Hewit, 122 Texas 38, 52 S. W. 2d 64 (2); Baldwin v. Johnson, 95 Texas 85, 65 S.W. 171. Where the directors of a corporation are claiming the property adverse to the corporation, stockholders may maintain a suit for its recovery. Canadian Country Club v. Johnson et al, Tex. Civ. App., 176 S.W. 835 (1,2), writ refused; Hildebrand, Texas Corporations, Vol. 3, 77 et seq., Sec. 701.

■ The directors of a corporation stand in a fiduciary relationship to the corporation and its stockholders, and they are without authority to act as such in a matter in which a director's interest is adverse to that of the corporation. The directors are not permitted to appropriate the property of the corporation to their benefit, nor should they permit others to do so. Art. 1349,

Vernon's Annotated Texas Civil Statutes. San Antonio St. Ry. Co. v. Adams, et al, 87 Texas 125, 26 S.W. 1040; Kirby et al v. Fitzgerald et al, Tex. Civ. App., 57 S.W. 2d 362 (4), affirmed, 126 Texas 411, 89 S.W. 2d 408, top 2nd. col. p. 410; Texas Auto Co. v. Arbetter, Tex. Civ. App., 1 S.W. 2d 334 (4,5), writ dismissed; Williams & Miller Gin Co. v. Knutson, et ux, Tex. Civ. App., 63 S.W. 2d 576 (2,3), no writ history.

The record clearly shows that at no meeting of all the stockholders of Tem-Trol, Inc. was it ever explained that White, Bushey and Hill were authorized to withdraw the $18,000. cash and apply it to the payment of their own individual obligation. Art. 1349, Vernon's Annotated Civil States, prohibits this very practice of using the corporation's assets for any other purpose than in carrying on the business of the corporation. Neither does the record reflect that the stockholders at any meeting ever authorized White, Bushey and Hill to turn back their stock to the corporation. The purported action taken at the meeting of only White, Bushey and Hill at 10:00 a. m. on April 26, 1948 could not be any authority for these three incorporators to return their stock to the corporation because White, Bushey and Hill were individually interested in this transaction and were disqualified to take such action. No others were present and voted on such a resolution, and such action being clearly against the corporation's interest could only be authorized by disinterested stockholders and after a full and complete disclosure of all facts by White, et al to the stockholders. Hildebrand, Texas Corporations, Vol. 3, p. 61, Sec. 698. This not having been done, the corporation or other stockholders were not bound thereby. Only disinterested stockholders could take such action and they never having done so, the return of all capital stock did not bind the corporation. The record shows without any contradiction or question that the return of the stock and the withdrawing of the $18,000.00 in cash was detrimental to the corporation and stripped it of sufficient funds with which to operate. This action of White, Bushey and Hill gave them no right to take the $18,000.00 and apply it to their individual obligations. This action violated the duty which these three incorporators owed to the corporation and its stockholders, and can be set aside at the suit of any stockholder for the benefit of all the stockholders. Respondents claim that such action was ratified at the stockholders meeting held at 10:30 a. m. on April 26, 1948, but the minutes of this meeting contain no reference to the turning back of all capital stock in Tem-Trol, Inc. by White, Bushey and Hill. Neither are there any minutes show-

ing authority of White, Bushey and Hill to use the $18,000.00 of corporate funds for the payment of their individual obligation. At the directors meeting held at 11:00 a. m. on the 26th of April, 1948, there is a resolution authorizing the issuance of $7,500.00 stock in the corporation to White and Bushey in payment for a franchise, and selling to White and Bushey $6,500.00 additional stock for their note due on or before two years. The issuance and sale of $6,500.00 stock for notes is in violation of Art. XII, Sec. 6 of the Constitution of Texas, and therefore such action was void and of no force and effect. McCarthy et al v. Texas Loan & Guaranty Co., Tex. Civ. App., 142 S.W. 96; Hildebrand, Texas Corporations, Vol. 2, p. 9, et seq, Sec. 283.

■ When all of the evidence is considered it shows a plan and course of dealing on the part of White, Bushey and Hill to secure a charter for a corporation without complying with the Constitution and statutes of Texas. We cannot give our approval to such practices. We hold that White, Bushey and Hill were liable for the return of the corporate assets appropriated by them to their own individual use, and the trial court was in error in instructing a verdict in their favor.

■ Next we come to the question of the liability of the Bank in this suit. There is no controversy but that the Bank knew that the $18,000.00 was the property of Tem-Trol, Inc. The Bank had credited this amount to Tem-Trol, Inc. and had issued its deposit slip showing such credit, knowing such deposit slip was to be exhibited to the Secretary of State for the purpose of securing the corporate charter. The Bank knew that the charter had been issued to the corporation, for it required a corporate resolution authorizing White and Bushey to sign checks against the corporation bank account. The Bank received the check for $18,025.00 in favor of White, Bushey and Hill drawn against the corporation's bank account and applied this check to the payment of the individual note of White, Bushey and Hill. Knowing all these facts the Bank cannot be heard to say it did not know of the violation by White, Bushey and Hill of the fiduciary obligation to the corporation and its stockholders and the misappropriation of the corporate assets. The Bank claims that petitioner must bring home to it notice of such violation of duty and also prove it did not act in good faith throughout the transactions involved. Where a Bank receives the proceeds the rule of law is that the bank is liable if it permits the depositor to withdraw funds held in trust and to apply such funds to the payment of such depositor's obligations to the

bank. United States Fidelity & Guaranty Co. v. Adoue & Lobit, 104 Texas 379, 137 S.W. 648, 37 L.R.A. N.S. 409; motion for rehearing overruled, 104 Texas 379, 138 S.W. 383, 37 L.R.A. N.S. 409; Grebe v. First State Bank of Bishop, 136 Texas 226, 150 S.W. 2d 64 (9, 10 and 11). The bank cannot be heard to say, after participating in the directors wrongful conversation of the corporation's funds to the bank's own substantial advantage, that it did not know of the wrong or that it was not consciously a participant in such wrong. Wichita Royalty Co. et al v. City Nat. Bank of Wichita Falls et al, 127 Texas 158, 89 S.W. 2d 394 (1); motion for rehearing overruled 127 Texas 184, 93 S.W. 2d 143. It necessarily follows that the bank is also liable at the suit of the stockholders for the return to the corporate assets of the $18,025.000 so appropriated by it to the payment of the individual indebtedness of White, Bushey and Hill.

■ Respondent Bank contends that since the trial judge rendered judgment without the aid of a jury, that we must assume the trial court correctly found all fact issues having support in the evidence in favor of the judgment. To support this position it cites certain cases. The rule contended for by respondents is not applicable where there is a jury present, but the case is withdrawn from the jury and a judgment rendered by the trial court. The true rule in such cases is that in determining whether it is proper to instruct a verdict the appellate court must view the evidence in the light most favorable to the losing party, and must indulge against the instruction every inference that may properly be drawn from the evidence. Stevens v. Karr, 119 Texas 479, 33 S.W. 2d 725 (9); White v. White, 141 Texas 328, 172 S.W. 2d 295 (1-5); Fitz-Gerald v. Hull et al, 150 Texas 39, 237 S.W. 2d 256.

■ Respondent Bank further contends that since the petitioners did not file a request for the submission to the jury of those issues of fact necessary to establish his cause of action, he cannot now be heard to complain of the trial court's action in withdrawing the case from the jury and rendering judgment for all defendants. To sustain its position the Bank cites Tiblier v. Perez et ux, Tex. Civ. App., 277 S.W. 189, no writ history, and Mendlovitz v. Samuels Shoe Co., Tex. Civ. App., 5 S.W. 2d 559, no writ history. These cases do sustain the Bank's position, but this Court has never approved such holding. The true rule is stated in the cases of Citizens' Nat. Bank of Brownwood v. Texas Compress Co., Tex. Civ. App., 294 S.W. 331 (2,3), writ

refused; Miller-Vidor Lumber Co. v. Schreiber et al, Tex. Civ. App., 298 S.W. 154 (10), writ refused; Hunter v. Grant, Tex. Civ. App., 41 S.W. 2d 245 (1), writ refused. In so far as the Tiblier case and the Mendlovitz cases are authority for the proposition asserted by the Bank, they are hereby expressly overruled. Where the trial court gives an instructed verdict it is not necessary to request that special issues be submitted. The trial court should have instructed a verdict for the plaintiff, Dunagan, in his representative capacity on behalf of all of the stockholders of Tem-Trol, Inc. against the individuals White, Bushey and Hill and the First National Bank in Houston for the sum of $18,025.00, plus interest at 6% from April 9, 1948.

■ As to Dunagan's suit in his individual capacity—he properly brought this suit for such individual relief as his pleadings and the proof offered would support, as against the individuals. Stinnett et al v. Paramount-Famous Lasky Corporation of New York, Tex. Com. App., 37 S.W. 2d 145 (8); 167 A.L.R. 285; Hildebrand, Texas Corporations, Vol. 3, p. 159, et seq., Sec. 763. We do not find any evidence in the record to support an individual cause of action against the Bank. The uncontroverted testimony shows that Dunagan was entitled to receive stock in Tem-Trol, Inc. from White, Bushey and Hill in an amount of $5,000.00 and he should have had a judgment against White, Bushey and Hill establishing his interest in the corporation to this stock. As to his individual claims for damages against White, Bushey and Hill, the evidence raised a fact issue which should be submitted to a jury, and the cause must be reversed.

The judgments of both courts below in so far as they deny Dunagan any recovery against the First National Bank in Houston on his individual cause of action is affirmed. Judgment is here rendered against C. W. Bushey, J. B. White, Harry L. Hill and the First National Bank in Houston, Texas, and in favor of all of the stockholders of Tem-Trol, Inc. (including Dunagan) as represented by Dunagan for $18,025.00, plus interest from April 9, 1948 at 6% per annum. Dunagan's individual cause of action being a severable cause from his suit in a representative capacity, the judgments of the trial court and the Court of Civil Appeals denying him individual recovery against White, Bushey and Hill are hereby reversed and that cause is remanded to the trial court for further proceedings consistent with this opinion.

Opinion delivered December 2, 1953.

Associate Justice Garwood not sitting.