In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00210-CR
______________________________


 
EX PARTE:
DAVID HEARING
 


                                              

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 1407-H


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            David Hearing wants to stay in Texas rather than return to Tennessee to face two murder
charges. Law enforcement officials in Gregg County, Texas, recently apprehended Hearing and took
him before the County Court at Law No. 2 for proceedings on Hearing's application for writ of
habeas corpus in which he contested his extradition to Tennessee. The trial court found
(1) Mr. Hearing was validly wanted by Tennessee officials, (2) the necessary documents for
Hearing's return to Tennessee had been presented to the court by Tennessee and Texas prosecutors,
and (3) Mr. Hearing should be extradited to Tennessee. On appeal to this Court, Hearing challenges
the trial court's finding of probable cause to have him arrested, the finding that the State's
documentation supported the extradition, and the finding that there was sufficient evidence of
Hearing's identity as the person being sought under the Tennessee murder warrants. We affirm.
Standard of Review
            Texas has adopted the Uniform Criminal Extradition Act (hereinafter the Act). Tex. Code
Crim. Proc. Ann. art. 51.13 (Vernon Supp. 2004); State ex rel. Holmes v. Klevenhagen, 819 S.W.2d
539, 540 (Tex. Crim. App. 1991) (orig. proceeding). The Act governs the procedure for extraditing
fugitives found in Texas. In relevant part, the Act states:
No demand for the extradition of a person charged with a crime in another State shall
be recognized by the Governor unless in writing, alleging . . . that the accused was
present in the demanding State at the time of the commission of the alleged crime,
and that thereafter he fled from the State, and accompanied by a copy of an
indictment found or by information supported by affidavit in the State having
jurisdiction of the crime, or by a copy of an affidavit before a magistrate there,
together with a copy of any warrant which issued thereupon; or by a copy of a
judgment of conviction or of a sentence imposed in execution thereof, together with
a statement by the Executive Authority of the demanding State that the person
claimed has escaped from confinement or has broken the terms of his bail, probation
or parole. The indictment, information, or affidavit made before the magistrate must
substantially charge the person demanded with having committed a crime under the
law of that State; and the copy of indictment, information, affidavit, judgment of
conviction or sentence must be authenticated by the Executive Authority making the
demand; provided, however, that all such copies of the aforesaid instruments shall
be in duplicate, one complete set of such instruments to be delivered to the defendant
or to his attorney.
 
Tex. Code Crim. Proc. Ann. art. 51.13, § 3.
            In conducting an extradition hearing, the asylum state may do no more than determine
whether the requisites of the Act have been satisfied. California v. Superior Court of Cal., 482 U.S.
400, 409–10 (1987). During an extradition hearing, the person contesting extradition may neither
raise defenses to the underlying charge nor contest whether he or she is guilty. Holmes, 819 S.W.2d
at 543. Instead, the Act leaves open only four issues for consideration before the fugitive should be
delivered to the demanding state: (1) whether the extradition documents are, on their face, in order;
(2) whether the accused has been charged with a crime in the demanding state; (3) whether the
person  in  custody  is  the  same  person  the  demanding  state  now  requests  be  extradited;  and
(4) whether the accused is a fugitive. Id. at 542–43; see also Michigan v. Doran, 439 U.S. 282, 289
(1978).
 
 
Analysis
            In his first point of error, Hearing contends "if the documents supporting the governor's
warrant are insufficient to establish that a judicial determination of probable cause was made in the
demanding state, the accused may inquire into the issue of probable cause at the habeas corpus
hearing." It appears, however, that the United States Supreme Court has already determined that
petitioners such as Mr. Hearing may not, during an extradition proceeding, challenge the
determination that probable cause exists to issue a warrant when that determination has previously
been made by a magistrate of the demanding jurisdiction.
            "Interstate extradition was intended to be a summary and mandatory executive proceeding
derived from the language of Art. IV, § 2, cl. 2 of the [United States] Constitution." Id. at 288. "The
[Extradition] Clause never contemplated that the asylum state was to conduct the kind of preliminary
inquiry traditionally intervening between the initial arrest and trial." Id. Thus, "[a] governor's grant
of extradition is prima facie evidence that the constitutional and statutory requirements have been
met." Id. at 289; see also Hanks v. State, 113 S.W.3d 523, 525 (Tex. App.—Houston [1st Dist.]
2003, no pet.) (governor's warrant establishes prima facie case for extradition). Once the governor's
warrant issues, the court of the asylum state is not free to redetermine the issue of probable cause for
the issuance of a warrant in the demanding jurisdiction. Doran, 439 U.S. at 290.
            In Tennessee, magistrates are authorized to issue an arrest warrant only after they first
determine probable cause exists to believe the accused committed the alleged offense. Tenn. Code
Ann. § 40-6-205 (2003). Tennessee law further provides that judges of the General Sessions Courts
are "magistrates." Tenn. Code Ann. § 40-5-102(4) (2003). The record now before us shows the
judge of the General Sessions Court of Hancock County, Tennessee, issued an arrest warrant based
on the sworn affidavit of James Whitson. Accordingly, the judge of the General Sessions Court of
Hancock County had already determined that "from the written examination that there [wa]s probable
cause to believe the [murder] complained of ha[d] been committed and that there [wa]s probable
cause to believe the defendant ha[d] committed it . . . ." See Tenn. Code Ann. § 40-6-205.                        Acting on information provided by Tennessee officials, the Governor of Texas issued a
warrant for Hearing's extradition. "[O]nce the governor of the asylum state has acted on a requisition
for extradition based on the demanding state's judicial determination that probable cause existed, no
further judicial inquiry may be had on that issue in the asylum state." Doran, 439 U.S. at 290. We
therefore overrule Hearing's first point of error.
            In his second point of error, Hearing contends the trial court erred in finding that (a) the
extradition documents were in order and properly authenticated, and (b) the affidavit in support of
the arrest warrant was sufficient. As a requirement to presenting an issue for appellate review, the
record must show the complaint was made to the trial court and the trial court either ruled on the
request or refused to rule on the request despite the complaining party's objection to the failure to rule. 
Tex. R. App. P. 33.1. In the case now before us, Hearing did not object to the documents' authenticity
during the trial court hearing. In fact, when the State offered the documents now at issue for
admission before the trial court, Hearing's counsel stated, "For the purposes of this hearing, Judge,
I have no objections to the documents being entered for the purpose of the hearing." Thus, Mr.
Hearing has failed to preserve for our review the issue of whether the documents admitted into
evidence were properly authenticated. We also find Hearing's challenge to the sufficiency of the
affidavit to be misplaced: such a challenge is tantamount to contesting the Tennessee magistrate's
determination of probable cause, a challenge which the United States Supreme Court has expressly
stated has no place in an extradition proceeding where the governor of the asylum state has issued a
warrant based on the demanding state's judicial determination that probable cause existed for that
warrant's issuance. See Doran, 439 U.S. at 290. We overrule Hearing's second point of error.
            In his third point of error, Hearing contends the trial court erred by finding there was sufficient
evidence to establish Hearing's identity as the person sought by Tennessee officials for the murder
charges. "To raise the issue of identity, the accused must deny under oath that he is the person named
in the warrant." Hanks, 113 S.W.3d at 525 (referencing Ex parte Connelly, 479 S.W.2d 943, 944
(Tex. Crim. App. 1972)). Mr. Hearing did not testify at the extradition proceedings and presented
no evidence (such as his own sworn affidavit or the testimony of another) on the issue of identity. 
Thus, Hearing did not deny under oath he was the person being sought by Tennessee officials, and
he failed to raise an issue as to identity. Cf. id. Because Mr. Hearing failed to raise the issue of
identity, the burden never shifted to the demanding state to show he was identical to the person being
sought by the demanding state. 
            For the reasons stated, we find the trial court properly denied Hearing's application for writ
of habeas corpus. We affirm the trial court's judgment.
 
 
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice
 
Date Submitted:          January 6, 2004
Date Decided:             January 7, 2004
 
Publish



tions are less than scintilla of evidence raising genuine issue of material fact). Therefore, PDS
failed to produce even a scintilla of evidence indicating it was entitled to recover under unjust
enrichment, and the trial court did not err by granting a no-evidence summary judgment with respect
to unjust enrichment. 

 Member Oppression 

 Member oppression has been defined as follows: 

 1. majority shareholders' conduct that substantially defeats the minority's
expectations that, objectively viewed, were both reasonable under the circumstances
and central to the minority shareholder's decision to join the venture; or 


 2. burdensome, harsh, or wrongful conduct; a lack of probity and fair dealing
in the company's affairs to the prejudice of some members; or a visible departure
from the standards of fair dealing and a violation of fair play on which each
shareholder is entitled to rely. 


Willis v. Bydalek, 997 S.W.2d 798, 801 (Tex. App.-Houston [1st Dist.] 1999, pet. denied) (citing
Davis v. Sheerin, 754 S.W.2d 375, 381-82 (Tex. App.-Houston [1st Dist.] 1988, writ denied)). 

 PDS contends GBM committed member oppression by wrongfully withholding profit
distributions, firing Max and Morris Horton from MJCM, failing to inform PDS of company actions,
and paying for their personal legal fees in this lawsuit with MJCM funds. However, PDS failed to
set forth any evidence in support of its claim for member oppression. See Haas, 71 S.W.3d at 911. 
Therefore, PDS failed to raise a genuine issue of material fact, and the trial court properly granted
GBM's no-evidence motion for summary judgment with respect to member oppression. See Tex.
R. Civ. P. 166a(i); Grant v. Southwestern Elect. Power Co., 20 S.W.3d 764, 772 (Tex.
App.-Texarkana 2000), aff'd in part and rev'd in part on other grounds, 73 S.W.3d 211 (Tex. 2002). 

Claims Not Addressed in Motion for Summary Judgment

 PDS contends that summary judgment should not have been granted with respect to its claims
for breach of contract, reformation, breach of fiduciary duty, breach of duty of loyalty, and civil
conspiracy because GBM did not address such causes of action in its motion for summary judgment. 
GBM concedes that it did not expressly mention those causes of action in its motion. However,
GBM contends PDS waived error by failing to object to the absence of those causes of action, and
in the alternative, a trial on the merits would be meaningless because the motion for summary
judgment negated all factual bases for those causes of action. 

 Under Texas Rules of Civil Procedure, a motion for summary judgment "shall state the
specific grounds therefor," Tex. R. Civ. P. 166a(c), and a no-evidence motion for summary judgment
must "state the elements as to which there is no evidence." Tex. R. Civ. P. 166a(i). A motion for
summary judgment must expressly present the grounds on which it is made, and it must stand or fall
based on the grounds expressly presented in the motion. McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 338 (Tex. 1993). Further, a nonmovant is under no duty to object to the movant's
failure to include a particular cause of action in its motion. Id.; McKillip v. Employers Fire Ins. Co.,
932 S.W.2d 268, 271 (Tex. App.-Texarkana 1996, no writ). Accordingly, PDS did not waive its
right to complain on appeal that the trial court granted more relief than was requested. 

 Even though PDS was not required to object, GBM contends that summary judgment was
proper because the motion for summary judgment negated all factual bases for those claims. To
support its contention, GBM relies on Vogel v. Travelers Insurance Co., 966 S.W.2d 748, 750 (Tex.
App.-San Antonio 1998, no pet.). In Vogel, the appellate court ruled that a summary judgment
granted on a breach of contract cause of action, not urged in the motion for summary judgment,
should be affirmed if the elements urged in the motion and established by summary judgment proof
disposed of one or more elements to the breach of contract cause of action. The court reasoned that
reversing a summary judgment in that situation would be a meaningless exercise because the
questioned recovery was precluded as a matter of law. Id. at 754; see Chale Garza Inv., Inc. v.
Madaria, 931 S.W.2d 597, 601 (Tex. App.-San Antonio 1996, no writ). In the present case, GBM
contends that, because the Articles control in the event of a conflict with the Regulations, PDS is
precluded as a matter of law from recovering on its remaining claims. 

 With respect to PDS's breach of contract cause of action, a determination that the Articles
control in the event of a conflict with the Regulations is dispositive. PDS pled that "Gillen and
Baldridge   breached   their  contract  (the  Company  Regulation)  with  PDS  by  their  actions on
August 29, 2000." We have already found that the Articles control over the Regulations, and Gillen's
and Baldridge's actions on August 29, 2000, were clearly authorized by the terms set forth in those
documents. Therefore, it would be meaningless for this Court to reverse the summary judgment on
PDS's breach of contract cause of action. See Vogel, 966 S.W.2d at 754. 

 On the other hand, this determination does not as a matter of law preclude recovery on PDS's
remaining claims. For example, PDS contends it is entitled to reform the Articles so they are
consistent with the Regulations. The underlying objective of reformation is to correct a mutual
mistake made in preparing a written instrument, so the instrument truly reflects the original
agreement of the parties. Brinker v. Wobaco Trust Ltd., 610 S.W.2d 160, 163 (Tex. Civ.
App.-Texarkana 1980, writ ref'd n.r.e.). By implication, then, reformation requires two elements: 
(1) an original agreement, and (2) a mutual mistake made after the original agreement in reducing
the original agreement to writing. Cherokee Water Co. v. Forderhause, 741 S.W.2d 377, 379 (Tex.
1987). Accordingly, before this Court, or any other, can pass on the issue of reformation, there must
be a determination of whether an agreement was reached prior to the execution of the Regulations
and Articles, and if so, whether a mutual mistake was made in reducing that agreement to writing. 
Because GBM's motion for summary judgment did not address reformation, no evidence was
presented to negate the existence of those elements, and PDS was under no duty to establish their
presence. Therefore, the trial court erred by granting summary judgment with respect to reformation. 

 GBM also failed to address civil conspiracy in its motion for summary judgment. A civil
conspiracy consists of "a combination by two or more persons to accomplish an unlawful purpose
or to accomplish a lawful purpose by unlawful means." Firestone Steel Prods. Co. v. Barajas, 927
S.W.2d 608, 614 (Tex. 1996). The essential elements are: (1) two or more persons; (2) an object
to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more
unlawful, overt acts; and (5) damages as the proximate result. Massey v. Armco Steel Co., 652
S.W.2d 932, 934 (Tex. 1983). A determination that the Articles control over the Regulations is not
dispositive on a claim to recover under civil conspiracy. GBM failed to produce evidence that would
disprove any of those elements as a matter of law. See Gibbs v. Gen. Motors Corp., 450 S.W.2d 827,
828 (Tex. 1970). For the same reasons summary judgment was improper for reformation, the trial
court erred by granting summary judgment with respect to conspiracy. 

 In addition to the foregoing, PDS also contended that GBM breached its fiduciary duty and
duty of loyalty. With respect to fiduciary duty, an informal relationship may give rise to a fiduciary
duty where one person trusts in and relies on another, whether the relation is a moral, social,
domestic, or purely personal one. See Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex. 1962);
Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256, 261 (1951). But not every relationship involving
a high degree of trust and confidence rises to the stature of a fiduciary relationship. Crim Truck & 
Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 594 (Tex. 1992). Accordingly, while
a fiduciary or confidential relationship may arise from the circumstances of a particular case, to
impose such a relationship in a business transaction, the relationship must exist before, and apart
from, the agreement made the basis of the suit. Transport Ins. Co. v. Faircloth, 898 S.W.2d 269,
280 (Tex. 1995). It has been well established that the directors of a corporation stand in a fiduciary
relationship to the corporation and its stockholders, and they are without authority to act in a matter
in which a director's interest is adverse to that of the corporation. Dunagan v. Bushey, 152 Tex. 630,
263 S.W.2d 148, 152 (1953). Further, the duty of loyalty dictates that a corporate officer or director
must act in good faith and must not allow his or her personal interest to prevail over the interest of
the corporation. Landon v. S & H Mktg. Group, 82 S.W.3d 666, 672 (Tex. App.-Eastland 2002, no
pet.). The duty of loyalty requires an extreme measure of candor, unselfishness, and good faith on
the part of the officer or director. Int'l Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567, 577 (Tex.
1963); Landon, 82 S.W.3d at 672.

 GBM contends that, because their actions were justified under the Articles, a claim for breach
of fiduciary duty and duty of loyalty would be without merit. The determination that the Articles
control over the Regulations fails to negate facts that would, if proven, support these claims and
therefore is not dispositive. There was nothing introduced into the record that would warrant a
summary judgment, and the trial court erred by granting one with respect to breach of fiduciary duty
and duty of loyalty.

 For the reasons stated, summary judgment is affirmed with respect to declaratory relief,
unjust enrichment, member oppression, and breach of contract; the judgment with respect to breach
of fiduciary duty, breach of duty of loyalty, civil conspiracy, and reformation is reversed; and those
claims are remanded to the trial court for further proceedings. 



 Josh R. Morriss, III

 Chief Justice


Date Submitted: February 19, 2003

Date Decided: March 28, 2003





ON MOTION FOR REHEARING



 In its motion for rehearing, Pinnacle Data Services, Inc. (PDS) contends the entire case must
have been remanded, not just those points that were not addressed in Joseph Gillen's motion for
summary judgment. In support of its contention, PDS relies on Uribe v. Houston General Insurance
Co., 849 S.W.2d 447, 449-50 (Tex. App.-San Antonio 1993, no writ), and Chessher v. Southwestern
Bell Telephone Co., 658 S.W.2d 563 (Tex. 1983). We have reviewed the relevant line of cases
dealing with this issue. Our disposition is correct.

 We note that there has been, in the past, some confusion about whether certain summary
judgments are final and appealable and about how they should be handled on appeal. Recent cases
have put that confusion to rest. To the extent Uribe and Chessher would require a complete remand
of this case, they, and cases of their lineage, have been superseded by subsequent, controlling
precedent. Where, as here, a final summary judgment has disposed of a case and included causes
of action not addressed in the underlying motion, that judgment is erroneous and must be affirmed
as to the causes of action properly adjudged and remanded as to those causes of action not addressed
in the underlying motion. Jacobs v. Satterwhite, 65 S.W.3d 653 (Tex. 2001); Bandera Elec. Coop.,
Inc. v. Gilchrist, 946 S.W.2d 336 (Tex. 1997); Page v. Geller, 941 S.W.2d 101 (Tex. 1997); Kleven
v. Tex. Dept. of Criminal Justice-I.D., 69 S.W.3d 341, 344 (Tex. App.-Texarkana 2002, no pet.).

 We overrule PDS's motion for rehearing.


 Josh R. Morriss, III

 Chief Justice


Date: April 23, 2003



1. PDS is owned by Max Horton. His brother, Morris Horton, participates in the management
of PDS. Apparently, Max and Morris were under the impression that, despite technically not being 
members of MJCM, they would still have the right to participate in its management. 
2. In order to determine the proper salaries to be paid, Gillen hired a third-party compensation
consultant to issue a report indicating the appropriate salary to be paid employees holding the
positions occupied by Gillen and Baldridge. 
3. At best, PDS contends it filed the response so the time and date stamp left by the after hours
clock reflects 12:00 a.m. on February 9, but even if its assertion is accurate, the filing would still be
late. More importantly, PDS failed to produce evidence contained in the record, and this Court has
found none, that a response was filed with the trial court any earlier than February 11. See Tex. R.
App. P. 38.1(g); Luckette v. State, 906 S.W.2d 663, 668 (Tex. App.-Amarillo 1995, writ ref'd)
(review by court of appeals is limited to confines of appellate record).