The appellant did not testify or offer any evidence in his own behalf.

Appellant's sole contention is that it was incumbent upon the State to introduce evidence which would negative the exception contained in Article 666–23a, Vernon's Ann.P.C., which provides that it is lawful to transport intoxicants from "a place where the sale thereof is legal to a place where the possession thereof is legal." This Court has heretofore held that it is incumbent upon the appellant to bring himself within such exception. See Brooks v. State, 154 Tex.Cr.R. 512, 228 S.W.2d 863; Martin v. State, Tex.Cr.App., 297 S.W.2d 166, and Evans v. State, Tex.Cr.App., 308 S.W.2d 503, 504. In Evans, we said:

"An examination of the statement of facts reveals no evidence upon which the jury could base a finding that appellant purchased the beer for his own consumption, or that he was transporting it from a place where the sale thereof was legal. For both reasons, appellant failed to bring himself within the exception contained in Art. 666–23a, Sec. (1), V.A.P.C., above quoted."

The judgment is affirmed.

**CAPROCK MACHINERY COMPANY,**
**Inc., Appellant,**

v.

**Ray BOSWELL, Appellee.**

No. 6804.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 17, 1958.

Rehearing Denied Dec. 15, 1958.

E. Byron Singleton, Amarillo, for appellant.

Sturgeon & Thompson, Pampa, for appellee.

NORTHCUTT, Justice.

This is an appeal from an order overruling a plea of privilege. Appellee, Ray Boswell, instituted the suit in the District Court of Gray County, Texas, against Hetherington & Berner Inc., a corporation, Caprock Machinery Co., a corporation, Bob Lowder and C.I.T. Corporation seeking to rescind and cancel a contract of sale between the appellee and Caprock Machinery Co., Inc., Bob Lowder and Hetherington & Berner Inc., whereby appellee had purchased one Moto-Paver, and to recover the amount of the purchase price that appellee had paid upon said machine, together with any and other incidental expenses incurred by him; that he further recover judgment against Bob Lowder, Hetherington & Berner and Caprock Machinery Company for his damages sustained and the loss of work occasioned by having to repair or re-do jobs done with the Moto-Paver in the amount of $10,000 and in the event that it be determined that appellee was indebted to C.I.T. Corporation, in any amount, that appellee have judgment against the other defendants for such amount; that C.I.T. Corporation be enjoined from foreclosing its lien against appellee as seeking a personal judgment against appellee for the balance due on the purchase price of said Moto-Paver until the controversy of the appellee with other defendants be finally adjudicated.

Caprock Machinery Company filed its plea of privilege seeking to have the case transferred to Potter County, Texas, where its principal office or business was located. Appellee filed his controverting affidavit, and upon hearing such plea the trial court overruled appellant's plea of privilege, and from this order appellant perfected this appeal.

The sole question to be determined here is whether or not the representations made by Russell Cartwright in Gray County were such as to hold venue in Gray County under Section 7 of Article 1995, Vernon's Ann.Texas Revised Civil Statutes. Appellee testified about the representations made by Russell Cartwright as follows:

"Q. The knowledge that Mr. Cartwright may have had concerning this motor paver—the understanding that was had between you and Mr. Cartwright concerning whatever he may say about it, he could and would show it to you and prove it to you? A. That's right.

"Q. And he did take you down to Austin for the purpose of showing it to you and proving it to you so you could see it first-hand? A. That's right.

"Q. And so you could rely on your own judgment when you saw it, is that it? A. Yes.

"Q. (Mr. Singleton) Now, please, sir, when did you buy this motor paver? A. You mean the date?

"Q. Yes, sir. A. I would have to look on my records.

"Q. Did you buy it while you were at Austin? A. That's right.

"Q. When you came back from Austin and came back in town, you say here in your petition that some statements were made by Mr. Cartwright that you relied upon. Was there any statements made by Mr. Cartwright that you relied upon after you came back from Austin, or were those all made before? A. Concerning what?

"Q. Concerning what the machine would do and things he said in approaching you to seek to sell you a motor paver. A. I relied upon his statements about the machine and the paving, the quality of the paving.

"Q. Now, what representations did Mr. Russell Cartwright make to you here in Gray County, Texas? A. He recommended the machine for this work up here.

"Q. He recommended the machine for this work up here? A. Paving.

"Q. Paving? A. Streets, parking lots. * * *

"Q. Anything else? A. Well, the City has a lot of old concrete streets they wanted re-surfaced. He recommended it for that.

"Q. For re-surfacing and for paving? A. For re-surfacing and new construction.

"Q. Was there anything else he said to you other than his recommendations of the machine for paving up here and re-surfacing up here? A. Well, what else do you mean?

"Q. Not anything, sir. Just whatever the facts are. You just tell me, I don't know. A. Well, we had talked about the machine about two months before we went down there and a lot can be said; just general conversation.

"Q. But after you made the trip to Austin, then you knew as much or more about it than he did then? A. No, I wouldn't say I would know any more about it than he did.

"Q. Weren't you more experienced? A. I saw the machine working, and the pavement it was putting down looked all right to me at the time.

"Q. Whatever he did say to you before you made your trip to Austin, did you personally verify that yourself, by personally checking the machine and its work in Austin? A. No, I didn't see the machine until I got to Austin.

"Q. But after you got to Austin, did you then for the first time verify what had been said to you by Russell Cartwright, when you were in Austin? A. Russell told me that they had around seven hundred blocks of paving in Austin that this machine had put down, and Bob Lowder, the sales-man, representative of Hetherington and Berner, took me in his car, and drove over—I wouldn't say all seven hundred blocks, but a lot of these streets that the machine is supposed to have paved, but I didn't see the machine paving them; and he also took me where the machine was working. I saw it working, putting down paving.

"Q. You did see it put paving down? A. Yes, sir.

"Q. You saw it working? A. Yes, sir.

"Q. In Austin? A. In Austin.

"Q. Before you bought the machine? A. Before I bought a machine.

"Q. Before you bought this motor paver? A. Yes, sir.

"Q. Now, you say you talked to both, Russell Cartwright and Bob Lowder, and to the representative of the concern at Austin, and you also observed the work of the motor paver before you bought the machine? A. Yes, sir.

"Q. Did you rely principally upon what you actually saw, being a man of experience that you are? A. Well, what I saw, being brand new, looked all right to me.

"Q. And based upon what you saw, from your own personal observation at Austin, of the work of that machine in Austin, that is what you relied upon in buying the machine, is that correct? A. Not entirely.

"Q. What are the exceptions to that? A. The sales talk, and * *

"Q. What sales talk? A. From Mr. Lowder and Mr. Cartwright that the Hetherington and Berner people would make the machine do the same kind of work in Pampa for me.

"Q. Now, are you talking about the sales talk now that they gave you after you saw that machine down there? A. They promised me the machine would do the same work in Pampa.

"Q. And you didn't know what the same work was until you were there, of course? A. Well, the same work?

"Q. Yes, sir. A. If they showed me paving that the machine had done in Austin, I would have been satisfied with that in Pampa, if that is what you mean.

"Q. And in every event, you relied then upon what you saw there in Austin, plus you say some sales talk that they then made for the first time saying this machine will do the same in Pampa, is that it? A. That's right.

"Q. Now, what statements were made to you in Gray County, Texas upon which you relied in the purchase of this moto-paver that were false? A. That it would produce first-class paving.

"Q. That moto-paver would produce a first-class paving? A. That's right.

"Q. Who made that? A. Mr. Cartwright.

"Q. All right. What else, if anything? A. Well, that's all I can think of. If it produced first-class paving, that is all I was wanting.

"Q. Now, when that statement was made to you, what you are complaining of, if I understand it right, concerning statements made in Gray County, Texas, was the single statement made by Cartwright that the moto-paver would do first-class paving? A. That's right.

"Q. And nothing other than that, that is what we are talking about here, is that right? A. That's right."

There is other testimony given by appellee, we think, that clearly shows that if any fraud was perpetrated upon appellee at any time or place it was committed in Austin and not in Gray County. Under Sec. 7 of Art. 1995 it is provided: "In all cases of fraud * * * suit may be brought in the county where the fraud was committed * * *." We are of the opinion the appellee under his own evidence does not show fraud in this case and especially he does not show that any fraud was committed upon him in Gray County. Appellee went to Austin and satisfied himself that the machine would do satisfactory work. There being nothing in the record to show the work done by the machine in Austin was not satisfactory in order for us to sustain the trial court we would have to assume without sufficient evidence of probative force to support it, that it was the fault of the Moto-Paver that the paving in Gray County deteriorated and that appellee had to re-do it. Under the testimony of appellee it is undisputed that what was said by Mr. Cartwright was wholly in the nature of opinion or merely "trade talk."

A mere expression of opinion or "trade talk" such as is reflected by the record here cannot be construed into a false representation. We are unable to see where there was shown any such fraud committed in Gray County to hold venue there. But, if this were not so, since appellee sues for damages for breach of contract, venue cannot be sustained in the county where fraud in inducing the execution of the contract is alleged to have occurred since suing for the breach of the contract, appellee waives the fraud as a fact in fixing venue. Cockburn v. Less, Tex.Civ.App., 257 S.W.2d 470 affirmed 152 Tex. 572, 261 S.W.2d 689.

Judgment of the trial court is reversed and judgment rendered that the plea of privilege be sustained.