**WINK ENTERPRISES, INC., Appellant,**

v.

**Melvin N. DOW, Appellee.**

**No. 6256.**

Court of Civil Appeals of Texas,
El Paso.

Feb. 14, 1973.

Rehearing Denied March 14, 1973.

Stokes, Carnahan & Fields, Robert N. Carnahan, Amarillo, Jennings & Bookout, Donald L. Bookout, Tulia, for appellant.

John R. Lee, Finley & Scogin, Robert Scogin, Kermit, for appellee.

OPINION

PRESLAR, Justice.

This is an appeal from a suit alleging fraud in a transaction involving the purchase and sale of stock in a corporation, being controlling interest in Winkler County State Bank of Wink, Texas. The Trial Court granted Appellee's motion for instructed verdict. We reverse and remand.

Appellant herein, Wink Enterprises, Inc., was a corporation composed of Willis A. Hawkins, Jr., Willis A. Hawkins, Sr., and O. Norlan Dudley. These individuals were bankers in various parts of the Texas Panhandle, and learned, in the latter part of July, 1969, that the Winkler County State Bank was for sale. The three men discussed the possibility of purchasing the bank, and an appointment was arranged with Mr. Melvin N. Dow, Appellee herein, for the purpose of examining the bank's facilities and records. Thereafter, Mr. Dudley and Mr. Willis A. Hawkins, Jr. met

with Appellee and examined the bank's records, including past bank examinations and the earnings and dividend reports. Mr. Willis A. Hawkins, Jr. testified that when he asked Mr. Dow how the bank was doing that:

" . . . he said the bank was making money and it showed to have been making a lot of money in the records of earning and dividends in the prior year."

Mr. Hawkins also testified that he looked at the notes and note ledger cards and found that a great number of them were installment lien notes and that "generally the notes were current. Possibly one or two were two months behind. You consider a note delinquent after three months of non-payment." Mr. Hawkins further stated that the bank was completely open for all investigative purposes and that Mr. Dow told him that the liens criticized in previous bank examiners' reports would amount to losses of about $28,000.00 and that this "would be about the only losses that the bank would sustain during the year of 1969." There was also an estimated six or eight thousand dollar loss on the account of Lefty's Auto Sales due to hail damage to cars. The bank at this time had approximately $1,500,000.00 on deposit. The bank stock of Mr. Dow was subsequently purchased, July 29, 1969, in the name of Wink Enterprises, Inc., for $140,000.00, together with a contract employing Appellee Dow as a consultant to the bank for four years at a sum of $20,000.00. Appellant, as a corporate entity, was in existence at the time of purchase. On October 24, 1969, the first bank examination since the purchase was conducted, and it was readily apparent that the bank was in serious financial straits as the bank examiners' report considered loans in the amount of $71,905.00 should be charged off. A substantial amount of this loss was attributed to Lefty's Auto Sales, and the total amount was charged off as a loss. The report at this time also reflected doubtful notes of $87,578.00 and substandard notes of $57,192.00.

Appellant then hired additional personnel to repossess on delinquent notes, the majority of which concerned automobiles. An accountant was also employed to conduct an internal audit. On January 19, 1970, the date of the next bank examination, the report reflected $57,683.00 worth of substandard notes, $30,852.00 of doubtful notes, and $57,987.00 of notes again charged off. At this time, the bank examiners informed Appellant that additional capital in the amount of $100,000.00 had to be raised or the bank would be closed. The bank directors obtained this amount and the bank continued operating until approximately a year after the purchase when the bank examiners again informed Appellant that an additional $150,000.00 would have to be added to the bank's capital. This requirement was contained in the examiner's report of July 22, 1970. Appellant was unable to raise this amount but found a group of individuals willing to advance the sum required in exchange for Appellant's stock, for which Appellant received nothing. Appellant thereafter brought suit alleging fraud by Appellee's concealment of the true condition of numerous notes held by the bank and misrepresentation as to the financial condition of the bank.

■ Appellant contends, by its first point of error, that the trial Court erred in instructing a verdict for Appellee as "Appellant had fully raised issues of fact to support its cause of action." We agree. The statement of fact which covers approximately 450 pages of testimony contains several fully developed fact issues. Specifically, Appellant points to testimony in the record which, taken in toto, clearly paints a much rosier financial picture of the bank than was ultimately the case. In regard to installment notes, Mr. Willis A. Hawkins, Jr. testified:

"Q. What did you see when you looked at those notes?

A. We looked at the ledger cards again because that's where the entries

were being made and everything showed to be within reason; not over one or two months past due. We questioned Mr. Dow about those and he assured us that we could get payment by getting after them and keep them within three months."

■ Mr. Norlan Dudley testified that Appellee verified all records and reports that Appellant examined, telling him that "the bank was doing very well," and that . . . "It was a good, sound bank and would continue to make money." We regard this as more than a statement of opinion. It means that facts exist which leads the maker to believe the statement, or facts actually exist that the bank is in sound condition. While it is true, as Appellee contends, that a more thorough investigation by Appellant would have revealed the actual financial condition of the bank, it is also clear from the testimony in the record that factual issues bearing on the question of fraud are present. In Johnson v. Karam, 466 S.W.2d 806 (Tex.Civ.App., writ ref'd n. r. e.), this Court stated:

"The correct rules governing the appellate court in considering cases withdrawn from the jury require this court to view the evidence in the light most favorable to the losing party, and to indulge against the instruction every inference that may be properly drawn from the evidence. Dunagan v. Bushey, 152 Tex. 630, 263 S.W.2d 148 (1953). If the evidence is conflicting, the jury must decide the conflict; and if the evidence is not conflicting, but reasonable minds might differ as to its effect, still a fact issue is presented. LeMaster v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224 (1942)."

■ In 25 Tex.Jur.2d, Sec. 13, p. 625, the elements of fraud are " . . . said to be made up of any act, omission, or concealment that involves a breach of legal duty, trust, or confidence justly reposed and that is injurious to another person, or by which an undue and unconscientious advantage is taken. An action for fraud may rest on concealment of, or failure to disclose, what is true, as well as on a direct false statement." And the matter is covered by the Tex.Bus. & Comm.Code Ann., V.T.C.A., in the following provision:

"Section 27.01. Fraud in Real Estate and Stock Transactions.

(a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a

(1) false representation of a past or existing material fact, when the false representation is

(A) made to a person for the purpose of inducing that person to enter into a contract; and

(B) relied on by that person in entering into that contract;".

A mere expression of opinion will not be construed as a false representation. Caprock Machinery Company, Inc. v. Boswell, 318 S.W.2d 669 (Tex.Civ.App.1958, writ dism'd) ; Fossier v. Morgan, 474 S.W. 2d 801 (Tex.Civ.App.1971, no writ). It has been held that misrepresentations to a prospective purchaser of corporate stock of the returns of such stock are actionable. Texas Co-operative Inv. Co. v. Clark, 216 S.W. 220 (Tex.Civ.App.1919), modified 239 S.W. 198 (Tex.Com.App.). See also White v. Peters, 185 S.W. 659 (Tex.Civ.App.1916, writ ref'd). The Court in Short v. Mitchell, 454 S.W.2d 285 (Tex.Civ.App.1970, writ ref'd n. r. e.), held that statements by an employee of a real estate agency that the house built by the defendant was of sound construction was a representation to purchasers of present material facts, not merely an opinion.

■ Whether a fraud has been committed ordinarily requires the determination of questions of fact by the trier of facts. 37 Am.Jur.2d, Sec. 19, Fraud and Deceit; Drinkard v. Ingram, 21 Tex. 650; Ellis v. Mathews, 19 Tex. 390; Crow v. Crow, 485 S.W.2d 928 (Tex.Civ.App.1972, no writ).

Our examination of the record in this case, in the light in which it must be reviewed, leads us to the conclusion that fact questions exist as to whether fraud has been committed, and that the Directed Verdict granted by the Trial Court cannot be sustained by other grounds in the Defendant-Appellee's motion therefor.

The largest lines of credit of the bank were with two auto dealers, Lefty's Auto Sales and Universal Auto Exchange, who assigned the notes of their customers to the bank. From the proceeds of each such note a portion was held by the bank in a "reserve fund" to cover deficiencies in the event of default and foreclosure. Many of these notes were not kept current by their makers, and some of the makers had moved and their addresses unknown, but the notes appeared current or near current because of the practice of Dow of making the payments out of the reserve fund. The prospective purchasers said they questioned him closely about these notes, and he assured them they could get payment by getting after them and keep them within three months. Three months was important, for at the point of three months delinquency, the bank examiners would require the notes to be charged off as a loss. Thus, this practice of keeping the notes current by payment from the reserve fund, not only made the notes look collectable, but was reflected in the appearance of the financial condition of the bank. When quizzed about these notes, Dow was silent as to how he was keeping them current. Where there is a duty to speak, silence may be as misleading as positive representation of existing facts. Rowntree v. Rice, 426 S.W.2d 890 (Tex.Civ.App.1968, writ ref'd n. r. e.). We conclude the representations made by Appellee raise proper questions for jury consideration in conjunction with the fact that Appellant had complete access to all records of the bank, although there was no duty to conduct an audit of such records. Wren v. Bohannon, 256 S.W.2d 112 (Tex. Civ.App.1953, no writ), and authorities there cited.

■ Appellant's second point of error concerns the exclusion of testimony by three members of the Board of Directors of the bank who would have testified that the entire Board was ignorant of the true condition of the bank because of the deliberate concealment of the defendant. Appellant preserved his error by a bill of exceptions, and we agree that such testimony was relevant on the issue of fraud. Such testimony was relevant to the bank being in good financial condition, past earnings, and payment of dividends. In 26 Tex.Jur.2d, Sec. 119, p. 89, it is stated:

"If the issue of fraud has been properly raised, all competent evidence that has a reasonable bearing on the issue is admissible and may be considered by the jury in reaching its verdict. * * * Fraud may be proved directly or by circumstances. All the facts and circumstances leading up to and connected with, the transaction are, ordinarily, admissible."

See also Squyres v. Christian, 242 S.W.2d 786 (Tex.Civ.App.1951, writ dism'd); United Savings Life Insurance Company v. Glenn, 473 S.W.2d 629 (Tex.Civ.App.1971, writ ref'd n. r. e.). The testimony elicited on the bill of exceptions points to the fact that the Board was unaware that notes on one of the largest lines of credit, Lefty's Auto Sales, were kept current by payments from the reserve account, and that Appellee gave assurances that such an account was sound. The exclusion of this testimony was error.

The judgment is reversed and remanded.