PRUITT et al. v. WESTBROOK et al. (No. 11971.)

Court of Civil Appeals of Texas. Fort Worth. Sept. 29, 1928.

A. H. Kirby, of Fort Worth, and J. D. Kugle and R. T. Meador, both of Dallas, for appellant.

Goree, Odell & Allen and Chas. L. Morgan, all of Fort Worth, for appellees.

BUCK, J. L. B. Pruitt, "for himself and all those persons similarly situated who may hereafter desire to join herein as plaintiffs," filed this suit against R. A. Westbrook, S. A. Thompson, and W. L. Stewart, and the Westbrook Oil Corporation. Plaintiff alleged that he was a stockholder in the Westbrook Oil Corporation, and owned 1,260 shares of stock in said corporation, and that he owned 450 shares of stock at the time of the increase of capital stock of the corporation hereinafter mentioned, that he was a minority stockholder, and that a large number of the minority stockholders owned stock in the defendant company who are not acquainted with the acts of fraud on the part of the defendants, as subsequently alleged, whose interests are identical and similar to that of the plaintiff, and whose names and addresses are unknown to plaintiff, but known to defendants. He alleged that the Westbrook Winkler County Corporation was organized and incorporated on January 27, 1926, with a capital stock of 60,000 shares of the par value of $1 per share, and that on the ——— day of ———, 1926, an amendment was secured to the charter of the Westbrook Winkler County Corporation, changing its name to the Westbrook Oil Corporation, and that defendants Westbrook, Thompson, and Stewart owned and controlled a majority of the capital stock prior to the change and at all times since the organization of said company; that by an amendment to the charter the capital stock of the corporation was increased from 60,000 shares of the par value of $1 per share to 300,000 shares of the par value of $300,000; that, in such application for an increase of the capital stock, and in securing such amendment to said charter, the defendants Westbrook, Thompson, and Stewart, subscribed for all of the increased shares of said capital stock in the sum of 240,000 shares, and claimed that they had paid for one-half of it, and did pay to the said corporation for one-half of it by assigning to the said corporation the oil, gas, and mineral leases on 1,000 acres of land valued at $100,000, in payment of 100,000 shares of such increased capital stock.

Plaintiff further alleged that the leases on the 1,000 acres assigned and conveyed by defendants Westbrook, Thompson, and Stewart were not of the reasonable market value of $100,000, but of much less value, and that, by reason of such transaction on the part of defendants, plaintiff and the other minority stockholders had been injured, and the value of their shares of stock had been reduced. Plaintiff further alleged that the assets of said corporation at the time and prior to said amendment to the charter aforesaid, consisted of oil and gas leases on 3,000 acres of land with a well in process of drilling on it, and that such assets were worth more than three times as much as the mineral lease on the 1,000 acres conveyed to the corporation in payment of $100,000 of the capital stock. Plaintiff further alleged that defendants as directors of said corporation were the sole and only representatives of said corporation at the time of amending said charter and the increasing of said capital stock, and that they were dealing with themselves in company matters, and there was no one to represent the interest of the company and of the minority stockholders; that such transaction was a fraud on the rights of the stockholders, in that same was inequitable, unconscionable, and unfair, and that defendants by said transaction reaped a profit to their own advantage of more than double the amount of the assets which they added to said corporation, in that they acquired two-thirds of all the outstanding stock at the time and added to the holdings of said corporation only one-third additional assets; that they were dealing among themselves in company matters to the great injustice and loss of plaintiff and other minority stockholders, and to their own advantage and gain.

Plaintiff sought a cancellation of the 120,000 shares of said stock, issued to the defendants, and prayed that said stock be canceled and returned to said company, and for a judgment for and on behalf of the corporation and the minority stockholders against said defendants for the amount which they have paid to themselves as dividends on said stock in the sum of $60,000, and for the appointment of a receiver under orders of the court to manage the affairs of said corporation pending its final liquidation, and for costs of suit, etc.

The defendants answered by a general demurrer, certain special exceptions, by a plea of estoppel, and by a plea of ratification, wherein they pleaded that plaintiff and the other minority stockholders had full knowledge of the details of the transaction by which defendants increased the capital stock and bought 120,000 shares, and paid for them by conveying to the corporation mineral leases on 1,000 acres of land, and the contract for drilling a well on the land owned by the corporation with one Geo. V. McCamey, who, the defendants alleged, was an experienced driller and of good financial standing. Defendants further alleged that they paid to him for the drilling of the well and for expenses incident thereto the sum of more than $20,000 in cash and on their credit, and executed to him a mineral lease on 5,840 acres of land as a consideration for the agreement on the part of said McCamey to drill said well as aforesaid in a good and workmanlike manner; that, to procure the services of a contractor of the type of man like McCamey, the de-

fendants surrendered all of their individual acreage offsetting said well, paid to him the case aforesaid, and furnished the derrick which they had previously constructed at their own cost and expense, believing that such a contract would insure the drilling of said well and give an added value to all lands covered by said original lease and prove them beneficial to all persons owning acreage covered by said lease.

Defendants further gave what purported to be a full and correct history of all the transactions connected with their administration as directors of the corporation and its affairs. It appears from such pleadings and the evidence that the acreage purchased by the defendants for drilling purposes prior to the organization of the corporation constituted a ranch owned by T. G. Hendricks and wife, in Winkler county, Tex., and that one G. W. Grant held and owned an oil and gas lease on said ranch, and assigned it to the defendants.

After hearing the evidence, the transcript of which covers some 255 pages in the statement of facts, the trial court gave a peremptory instruction to find for the defendants, and the jury so found. From this judgment the plaintiff has appealed.

### Opinion.

The evidence shows that the well drilled was not drilled on the 3,000 acres owned by the corporation prior to the increase in the capital stock, owing to the advice of the geologist employed by the corporation; that the place on the 3,000 acres where the defendants as directors had concluded to drill a well was very sandy and inaccessible for the hauling of the heavy timbers necessary to construct the rig, and the hauling of the tanks. There was no road near to this place, and the tanks had to be hauled and constructed.

The complaint of appellant is that the directors of the corporation were not authorized to act for it in a matter in which they had an adverse interest; that is, they could not act for themselves in tendering to the corporation the assignments on the 1,000 acres, and at the same time accept such tender as the directors of the corporation. They cite in support of their proposition Scott v. F. & M. Nat. Bank, 97 Tex. 31, 75 S. W. 7, 104 Am. St. Rep. 835, by Chief Justice Gaines, and Tenison v. Patton, 95 Tex. 284, 67 S. W. 92. In the first cited case the following is said:

"All the directors being interested in the pledge of the bonds, there was no one to act for the company, and the resolution that was passed not having been concurred in by all the stockholders, in our opinion the attempted pledge was void, and the sale under the power given in the mortgage was therefore of no effect."

In the second cited case Justice Williams says:

"It is doubtless right to allow a beneficiary the option of avoiding a trade affecting his interests which has been effected by a Trustee representing both parties to it, for the reason that the Trustee ought not to be allowed to act for and bind two parties having conflicting interests. It may be perfectly just to apply this principle to transactions in negotiating with the director or directors of a corporation where personally interested and at the same time representing the corporation, either alone or conjointly with co-directors; and this is probably the true spirit of the rule as it has been enforced in most of the cases. But we think it is not true that one who holds the position of director is incapable under all circumstances of divesting himself of his representative character in a particular transaction and dealing with the corporation through others competent to represent it as other trustees may deal directly with the beneficiaries. * * *

"The corporation is a separate entity for which its board of directors acts. The persons having the beneficial interest in the property are the stockholders, but their rights are centered in the corporation, and are managed and controlled through the board of directors, as the active representative of the company; and it is through it and not the stockholders that business deals are carried on. When a personal interest of one of them springs up, adverse to that of the corporation, it disqualifies him to act concerning it as one of the representatives or agents. But the others do not lose their representative capacity and still have power to bind the company."

The evidence shows that a meeting was called, and all of the stockholders notified, to determine as to the amendments to the charter and as to whether or not the 1,000 acres should be taken as payment for 100,000 of the new shares; 47,300 shares of the total 60,000 shares of stock were represented in person and by proxy. Plaintiff owned 20 shares, and two others owned 30 shares, and these three stockholders were represented in the meeting by one R. T. Meador, an attorney of Dallas. After a full discussion of the situation, it was decided to increase the capital stock from $60,000 to $300,000, and change the name of the company from Westbrook Winkler County Corporation to Westbrook Corporation. The final vote on these amendments was 47,280 shares for and 50 shares against. Plaintiff's representative, Mr. Meador, stated in the open meeting that he was very much in favor of the resolution and felt that its adoption should be had, but that he was voting the expressed sentiments of those for whom he held proxies, including plaintiff. In his testimony, Meador said that he was personally in favor of the adoption of the amendments for the increased capitalization, but did not express any view as to the inclusion of the 1,000 acres for $100,000 worth of stock.

But we think that, irrespective of the validity of the original trade, by means of which

the defendants put in the 1,000 acres upon which they held mineral leases, and received stock at the par value of $100,000, such transaction could be ratified by the stockholders. In Kidd v. New York Security Co., 75 N. H. 156, 71 A. 879, the Supreme Court of New Hampshire said, where a director had contracted personally with a corporation, and where the question of ratification was involved: "That a corporation may ratify the unauthorized transaction of its agents by the unanimous acquiescence of its stockholders, as well as by the vote of the majority in a corporate meeting, would seem not to be open to question. 1 Mor. Corp. § 525. Consequently, if there was evidence from which it could have been found that the plaintiffs, who owned all the preferred stock, and Lovell, who owned all the common stock, acquiesced in the provision of the contract to which objection is made, or waived their right to object to it, the fact is to be taken as found; for the general decree carries the presumption that all facts were found necessary to sustain it, and of which there was evidence."

In San Diego Ry. Co. v. Pacific Beach Co., 112 Cal. 62, 44 P. 335, 33 L. R. A. 797, the Supreme Court of California said: "The contention of appellant that the contract could not be ratified except by the unanimous consent of all the stockholders cannot be maintained. That principle does not apply to acts which might have been authorized by a majority in the first instance. 'The corporation may, however, ratify an unauthorized transaction of its agents;' and this may be done either by the unanimous acquiescence of the shareholders, or by vote of the majority, if the transaction is of such a character that the majority might have authorized it at the outset.' 1 Morawetz, Priv. Corp. 2d Ed., § 525, and the cases there cited. The rule is that the majority governs, and every stockholder contracts that such shall be the rule. Civ. Code, § 312."

In Russell v. Patterson Co., 232 Pa. 113, 81 A. 136, 36 L. R. A. (N. S.) 199, where the directors had voted to themselves a salary, and the majority of the stockholders, including the directors who were shareholders, ratified the allowance in a meeting over the protest of a minority of the stockholders, the court held that such transaction was only voidable and subject to ratification of the majority vote of the stock. The court said: "The act of a majority of the directors of a corporation in voting reasonable salaries to certain of their number for services performed for the corporation, while voidable, may be ratified by a meeting of the stockholders, against the protest of minority members, although the directors, including those whose salary is involved, as stockholders, vote for the ratification."

In Thompson on Corporations, § 2048, pp. 1117, 1118, the rule, as deduced from many authorities cited, is succinctly stated as follows: "It follows from the fact that the stockholders are, in a substantial sense, the corporation, that many acts which the directors or other executive officers may do outside the scope of their powers may become ratified and validated by the acquiescence of the body of shareholders; and, in general, the body of shareholders can ratify and confirm any act, done by the directors or other officers of the corporation, without a precedent authorization, which the shareholders could have authorized originally, unless the acts offend against the public policy or involve the rights of creditors. In other words, they may ratify any act so done, unless the corporation is, by its charter or governing statute, or by the rules of the common law having reference to public policy, precluded from doing it in the first instance."

We think the case of Tenison v. Patton, supra, upholds the view stated in these authorities. See Howe v. Wichita State Bank & Trust Co. (Tex. Civ. App.) 242 S. W. 1097; Davis v. Nueces Valley Irrigation Co., 103 Tex. 243, 126 S. W. 4.

Perhaps some of the apparent conflict in the decisions is due to the somewhat loose way in which the courts sometimes use the words "void" and "voidable." See Washer v. Smyer, 109 Tex. 398, 211 S. W. 985, 4 A. L. R. 1320, opinion by Chief Justice Nelson Phillips. In the case of San Antonio Street Ry. Co. v. Adams, 87 Tex. 125, 26 S. W. 1040, cited by appellant, there was involved an action brought by certain stockholders to enjoin the corporation from canceling for nonpayment therefor stock held by the plaintiffs in the defendant corporation. It was admitted that the stock had not been paid for, but it was contended that the directors had by a resolution waived this requirement. The Supreme Court held that such waiver of payment could not be enforced and was without effect for two reasons: (1) It was condemned by article 12, § 6, of the Constitution, which inhibits the issuance of stock in a corporation except for money paid, property delivered or labor performed; and (2) the directors who thus sought to exempt themselves from payment for said stock were personally interested in the transaction and could not bind the corporation in such manner.

We think the authorities are uniform in holding that, where the actions or transactions of the directors are involved, and the claim is made that the directors were personally interested in consummating the deal against which an attack is made, that such transaction or actions may be ratified by a vote or the acquiescence of all the stockholders, or even a majority thereof, if such actions or transactions are not inhibited by the common law as against public policy or not inhibited by statute. The evidence and pleadings show in this case that the holders of 205,999 shares of capital stock joined

the defendants in this case and adopted the pleadings and prayer of the defendants and prayed that no receiver be appointed and that no liquidation be made of said corporation's assets, as such actions would be disastrous to the interests of such stockholders, and stated that the management of the present board of directors has been satisfactory and for the best interests of the stockholders. In so far as the record discloses, only the plaintiff was dissatisfied. The evidence further shows that, when the additional capitalization was agreed upon and the charter was granted by the state of Texas enlarging said capitalization from $60,000 to $300,000 worth of stock, the directors sent letters to all of the stockholders, authorizing said stockholders to purchase each one 4 shares of the enlarged capitalization for every single share held by such stockholder. The evidence further shows that the plaintiff took advantage of this offer and purchased at least $500 worth of this new stock, and that he purchased stock perhaps from other stockholders to the amount of $500 more. All of these subsequent purchases were made after he was fully acquainted with the acts of the defendants in increasing the capitalization of the corporation and in putting into the capitalization thereof 1,000 acres at a valuation of $100,000. We think the evidence fully sustains the contention of the defendants that the management of the affairs of the corporation have been profitable to the shareholders, including plaintiff, and that dividends, one time to the amount of 50 cents per share, have been paid to such shareholders.

The writer of this opinion has read the statement of facts in full, as well as the pleadings of both parties in the transcript, and we all conclude that the action of the trial court in denying relief and in instructing the jury to return a verdict for the defendants should not be disturbed.

Judgment affirmed.