J. R. CANION, Jr., Appellant,

v.

TEXAS CYCLE SUPPLY, INC., Appellee.

No. 12409.

Court of Civil Appeals of Texas,
Austin.

May 26, 1976.

Rehearing Denied June 16, 1976.

Malcolm Robinson, Hooper, Robinson & Moeller, Austin, for appellant.

Robert C. (Lou) McCreary, Austin, for appellee.

SHANNON, Justice.

The receiver for Texas Cycle Supply, Inc., filed suit in the district court of Travis County against J. R. Canion, Jr., appellant, seeking the cancellation of a deed to a parcel of land and a judgment declaring that the said real estate was owned in fee simple by the corporation. After trial to the court, judgment was entered in favor of the corporation. We will reverse that judgment.

The receiver's cause of action and Canion's defenses were not fully pleaded. For present purposes, it is sufficient to state that the receiver's position was that Canion, as an officer and director of Texas Cycle Supply, Inc., appropriated an opportunity to which that corporation was entitled, when he purchased the property at a deed of trust sale. Canion denied that he usurped a corporate opportunity. His further position

during trial was that if he appropriated a corporate opportunity, he was exonerated from liability because his act was ratified by the corporation.

The property in dispute consists of two lots located in Travis County, and situated on the lots is a business building. At the time Canion purchased the property, Texas Cycle Supply occupied one-half of the space in the building as a tenant under a lease agreement with the owner.

Texas Cycle Supply, Inc., was incorporated in Texas in 1971, and was placed in receivership by the district court of Travis County in 1974. The incorporators and the initial board of directors were G. T. Connor, Canion, and his wife, Geneva Williams Canion. The incorporators called no organization meeting of the board of directors. No bylaws were adopted, no minutes were prepared, and no stock was issued. No officers were elected but the parties referred to Connor as president, Canion as vice-president, and Mrs. Canion as secretary. Canion's brief states, and the receiver does not deny, that there were no meetings of the board of directors during its existence.

The total capital of the corporation was $15,000.00 which Canion placed into the corporation in the beginning. During the life of the corporation, Canion also signed a personal guarantee to a local bank for $20,000 to allow the corporation to obtain financing. Connor did not contribute any capital to the corporation. He received a monthly salary as president. Canion and his wife were paid no salary by the corporation and did not actively participate in the daily operation of the corporation.

The facts concerning Canion's purchase of the property are as follows. In early 1972, Connor learned that the owner of the property was in financial difficulties and that the creditor intended to sell the property at a trustee's sale. Connor began investigating the possibility of the purchase of the property by the corporation. As a part of his investigation, Connor inquired of counsel for the corporation, Vernon Lemens, Jr., the best method of acquiring ownership. Connor told Canion that the

property could probably be bought for the corporation. Canion had the property appraised. The appraisal showed the value of the property to be $77,057.55.

Connor and Canion had planned to attend the trustee's sale. On the day of the trustee's sale, Connor was busy and he asked Canion to tend to the purchase of the property. Vernon Lemens testified that prior to the sale, Canion told him that Canion and Connor had decided that the property would be held in Canion's name temporarily for the benefit of the corporation. Lemens vouched further that he was so concerned about Canion's statement that he telephoned Connor to inquire if Connor had discussed the matter with Canion. Connor told him that he had not talked with Canion about the subject but that he trusted Canion and it would be "fine" to do whatever Canion wanted. Connor did not object to Canion about Canion's taking the property in his name. In fact, after the sale he never discussed the subject with Canion.

Lemens, acting as substitute trustee, placed Canion's name in the trustee's deed as grantee. Lemens testified that Canion asked him to prepare a deed for his signature so that Canion could "immediately" transfer the property back to the corporation.

No person connected with the corporation, or any other person, asked Canion to convey the property to the corporation until October, 1974, when the corporation was placed into receivership by G. T. Connor. Connor acted in this regard without informing Canion.

In this connection, the district court found as a fact that Canion did not "intentionally or willfully attempt to cheat or over-reach" the corporation.

Canion bid in the property for the amount owed on the note, $31,385.53. He paid that sum from his personal savings. Canion also paid $4,864.73 from his personal funds to Lemens for attorney's and trustee's fees. The court found as a fact that the corporation did not have the cash sum necessary to purchase the property at the trustee's sale.

The district court found as a fact, that at the time of the trustee's sale the market value of the property was between $77,057.55 and $60,000.00, and that the mortgage debt against the property was $31,385.53 in addition to attorney's fees and trustee's fees. At trial time, the court found that the value of the property was at least $82,000.00 and the mortgage debt against the property was $37,400.00.

After Canion's purchase of the property, the corporation paid a monthly payment of $538.00 to the savings institution financing the purchase. That payment was listed in the corporation's records as "rent." Canion showed the said monthly payments in his United States income tax returns as income to him. From the date of its purchase, the property was shown as an asset in Canion's personal financial statements. At Connor's direction, the property was also reflected in the books of the corporation as an asset.

At the time of the entry of judgment, Canion had made payments on the mortgage of the property and had made permanent improvements to the property in the combined total of $7,507.00.

The district court determined *inter alia* that at all times pertinent Canion occupied a fiduciary relationship with the corporation because of his position as vice-president, director, and *shareholder.* The court concluded further that Canion was acting for and on behalf of the corporation when he acquired the property, and that Canion held the property as constructive trustee for and on behalf of the corporation. Finally, the court determined the corporation held title to the property subject only to the lien in favor of the financing institution, and the lien of $7,507.00 in favor of Canion, which lien represented the cost of permanent improvements made and the amount of mortgage payments paid by Canion.

The court refused to find, among other things, that in addition to the corporation's not having the cash to bid in the property, there was no possibility for the corporation's being able to purchase the property absent the use of Canion's personal funds or guarantee.

The judgment cancelled the trustee's deed to Canion and provided further that the corporation recover fee simple title from Canion, subject to the liens mentioned above.

Of importance in the disposition of this appeal is an analysis of the extent of Canion's interest in the corporation. Appellee contends that Connor owned one-half of the shares of stock. As previously written, the corporation never issued any shares of stock. The district court made no direct findings with respect to ownership. The district court did find that Canion was ". . . the Vice-President, a Director and Shareholder . . ." in the corporation, and that Connor ". . . was and is the President and Director." It is undisputed that only Canion placed any money into the corporation. There is some mention in the record of Connor's services with respect to his ownership in the corporation. There is also some mention by Canion that he thought that he and Connor owned the corporation "fifty-fifty."

■ Tex.Bus.Corp.Act Ann. art. 2.16 B provides that promise of future services shall not constitute payment for shares in a corporation. Connor's future services, then, could not be viewed as payment for shares of stock. Also, what Canion may have supposed concerning ownership of shares does not make it so. We have concluded, as a matter of law, that Canion was the sole stockholder.

Canion attacks the judgment by many points of error in several briefs. No effort will be made to discuss the points in the order of their appearance in the briefs. The subject of most of the points is the claimed error of the court in its determination that Canion usurped a corporate opportunity. Canion's other major contention is that, assuming *arguendo* the usurpation of a corporate opportunity, the corporation ratified Canion's action by informal permission or acquiescence after the purchase of the property.

■ The relationship of officers and directors to a corporation is a fiduciary one imposing upon them the duty to exercise their powers as officers and directors solely for the benefit of the corporation and its stockholders. Implicit in such duty is that of not exercising their powers as officers and directors to serve their own personal interest at the expense of the corporation and its stockholders. Officers and directors have no more right to divert corporate opportunities and make them their own than they have to appropriate corporate property. On one hand, an officer's and director's duty of loyalty to the corporation and the stockholders is unyielding in its demand; on the other hand, the officer or director is not bound to act in noncorporate matters for the benefit of the corporation and stockholders to the exclusion of self-interest, and he may avail himself of all opportunities lying outside the field of his duties as an officer or director. *Diedrick v. Helm*, 217 Minn. 483, 14 N.W.2d 913 (1944).

■ Where a business opportunity is in the line of the corporation's activities, and is one in which the corporation has a legitimate interest or expectancy, the opportunity belongs to the corporation. An officer or director who diverts the opportunity and embraces it as his own is chargeable as a constructive trustee for the benefit of the corporation and holds all of the profits and benefits received therefrom for the corporation. *Diedrick v. Helm, supra; International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex.1963).

■ A corporation's financial inability to take advantage of a corporate opportunity is one of the defenses which may be asserted in a suit involving an alleged appropriation of a corporate opportunity. The burden of pleading and proving the corporate inability should be placed upon the officer or director who allegedly appropriated the corporate opportunity. See *Huffington v. Upchurch*, 532 S.W.2d 576 (Tex.1976).

We have some difficulty in understanding how an officer and director of a corporation, who is its sole shareholder, may appropriate a corporate opportunity of his solely owned corporation. For purposes of this

opinion, though, we will assume that Canion usurped a corporate opportunity and failed, as well, to prove the defense of the inability of the corporation to take advantage of the opportunity.

■ With respect to ratification, the rule is that where the actions or transactions of directors of a corporation are involved, and the claim is made that the directors are personally interested, such action or transaction may be ratified by vote or acquiescence of all, or a majority, of the stockholders. *Pruitt v. Westbrook*, 11 S.W.2d 562 (Tex.Civ.App.1928, no writ), *Western Inn Corporation v. Heyl*, 452 S.W.2d 752 (Tex.Civ.App.1970, writ ref'd n. r. e.). See also Baylor University: Lebowitz, *Director Misconduct and Shareholder Ratification in Texas*, 6 Baylor L.Rev. 1 (1953).

■ Canion did not plead that the corporation ratified the purchase of the property by Canion, but the defense of ratification was tried by implied consent. Tex.R. Civ.P. 67. In support of his contention of ratification, Canion points out that Connor, the president, knew that Canion had taken the property in his name, and for two years never protested. Moreover, the president of the corporation knew that the monthly drafts in payment to the financing institution were marked "rent." More to the point, the only stockholder of the corporation, Canion, obviously ratified his act as director in taking the corporate opportunity. See *Zorn v. Brooks*, 125 Tex. 614, 83 S.W.2d 949 (1935).

The judgment is reversed and judgment is here rendered that appellee take nothing.

Reversed and Rendered.

PHILLIPS, Chief Justice (dissenting).

I respectfully dissent.

After trial to the court whereupon an extensive, well-developed record was compiled, the court held that at all pertinent times appellant occupied a fiduciary relationship with Texas Cycle Supply, Inc., because of his position as vice-president, director and shareholder; that he was acting for and on behalf of the corporation when the property was acquired; and that he holds the property as constructive trustee for and on behalf of appellee corporation with rights to certain setoffs for personal funds expended.

I would affirm this judgment.

The facts of this case, as found by the trial court, place it squarely within the aegis of those cases which hold that under certain circumstances, opportunities to acquire assets are *corporate opportunities.* The leading Texas case is *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex.1963), and the doctrine has been reaffirmed recently in *Huffington v. Upchurch*, 532 S.W.2d 576 (Tex.1976).[1] The essence of the trial court's findings of fact is that the purchase of the building[2] had all of the trappings of a corporate enterprise from beginning to end. Connor located the building and began negotiations. The monthly payments in the amount of the mortgage notes were noted as corporate payments on principal (with the exception of several checks made out by appellant with the self-serving notation "rent").

During the trial of this case, seven witnesses, including the appellant, testified. The testimony of six of those witnesses supports the findings made by the trial court. The only testimony to the contrary is that of the appellant.

During the trial the appellant testified that he and Connor were each 50 percent shareholders of the corporation. This fact

1. See: Comment, 42 Texas L.Rev. 252 (1963); Hamilton *Business Organizations*, § 717, p. 219, n. 91, and the cases cited therein; Comment, *The Corporate Opportunity Doctrine*, 18 Sw. L.J. 96 (1964).

2. Article III of the Articles of Incorporation states: "The purposes for which this corporation is organized are (the) wholesale and retail sales of motorcycles, parts, accessories, and related items to include all sporting goods as may be used in indoor and outdoor activities. *To own and control under lease or otherwise, land, buildings, and property necessary to the conduct of such business.*" (Emphasis added)

has not been challenged in any way nor was it ever in issue. Yet, the majority of this Court has concluded and *found* that appellant was the sole stockholder because of some *innuendo* that Connor's stock was paid for either by a note or by the promise of services to be rendered, either of which method of acquiring stock is proscribed by Tex.Bus.Corp.Act Ann. art. 2.16(B). A fair reading of the statement of facts does not clearly disclose how Connor's stock was acquired.

The testimony of Guzman, the corporate accountant, was that Connor and Canion were each 50 percent shareholders, and that the initial capital of the corporation was $15,000 by "a check from . . . Mr. J. R. Canion to the corporate account, and *Mr. Connor was supposed to give Mr. Canion a note for $7,500 for his half."* (Emphasis added) Borrowing funds from a third party for the purchase of corporate stock does not fall within the prohibition of Tex.Bus. Corp.Act Ann. art. 2.16(B). *Ruthart v. First State Bank of Tulia, Texas,* 431 S.W.2d 366 (Tex.Civ.App.1968, writ ref'd). There is no evidence whatsoever of any note executed to, or funds borrowed by Connor from the corporation for stock.

In addition, Connor testified that he invested $5,000 in the corporation in early 1972 "as my part in putting in some money just like Mr. Canion put money in in the beginning. It was in the nature of capital." The fact that no stock certificates were issued either to Connor or Canion, is immaterial. Tex.Bus.Corp.Act Ann. art. 2.16(A) (Supp.1976). Connor's testimony was that he invested this sum at that time because "Mr. Canion was needing $5,000 for something, and I put $5,000 in the company, he took it out, he returned it." Connor's testimony of his investment was corroborated by the accountant Guzman, who testified that $5,000 was put into the corporation before his February, 1972, balance sheet was drawn, and was taken out of the business by Canion.

The majority has chosen to reverse the judgment of the trial court by *finding facts* neither alleged at trial, nor supported by any evidence in the record. As a result, the appellant is allowed to withdraw from the corporation its only substantial asset, and leave only a shell corporation against which fifty-three creditors may attempt to recover $95,231.60 in claims.