In the Matter of SAFETY INTERNATIONAL, INC., Individually and d/b/a Safety Compliance Rental, Inc., Safety Education Specialists, Inc., Safety Consultants, Inc. and International Operations, Inc., Debtor.

SAFETY INTERNATIONAL, INC., etc., et al., Plaintiffs-Appellees,

v.

Don L. DYER, Defendant-Appellant.

No. 84–1818.

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1985.

Thomas J. Stutz, Dallas, Tex., for defendant-appellant.

Corey W. Haugland, Anthony Safi, Wiley F. James, III, El Paso, Tex., for plaintiffs-appellees.

Before REAVLEY and JOLLY, Circuit Judges, and SANDERS,* District Judge.

## OPINION

REAVLEY, Circuit Judge:

Defendant-Appellant Don L. Dyer appeals the imposition of a constructive trust on his option to purchase the building where Plaintiff-Appellee Safety International, Inc. (Safety) has its offices. We reverse.

## FACTS

In 1977, Dyer and nominal codefendant Phillip H. Graves incorporated Safety, which Dyer had been operating since the mid-1960's. The business provided safety equipment to oil companies. Dyer and Graves each owned fifty percent of Safety's stock; they with their wives served as the company's directors and officers.

The following year, Safety entered into a five-year lease of office space in a building owned by the First National Bank of Midland. Concurrently, Dyer and Graves agreed to personally guarantee the lease in exchange for the option to buy the building, at a decreasing price, anytime during the lease period. Thereafter, in addition to its monthly rental payments, Safety made $200,000 worth of improvements to the building. Neither Dyer nor Graves spent any personal funds in connection with the building.

On January 1, 1982, as part of an agreement between Safety, Graves and Dyer, Graves acquired all of the Safety stock and Dyer acquired full interest in the purchase option. Safety was solvent at this time and continued solvent throughout the following summer. In late 1982, however, a downturn in the oil business resulted in Safety's becoming unable to pay its bills as they came due, although its total assets exceeded its liabilities.[1] Consequently, in November 1982, the company filed for reorganization under Chapter 11 of the Bankruptcy Code. Two months later, it sued to impose a constructive trust on the still-unexercised purchase option.

After a hearing, the bankruptcy judge concluded that Dyer and Graves had usurped a corporate opportunity, breaching their fiduciary duty to Safety, by taking the purchase option in their names rather

---

* District Judge of the Northern District of Texas, sitting by designation.

1. The record indicates that Safety's assets outweighed its liabilities at the time of the bankruptcy hearing. At oral argument, however, counsel for Safety stated that the company had since amended its financial statement to show liabilities exceeding assets.

than in Safety's. The bankruptcy judge ordered Dyer to turn over the option to Safety, and the district court affirmed.

## DISCUSSION

Dyer raises three main arguments on appeal: 1) the option was not a "corporate opportunity"; 2) Safety had waived its right to sue because the transaction was ratified by both of the shareholders; and 3) the action was barred by the statute of limitations. We choose to accept the second argument.

 Texas corporation law applies the "corporate opportunity" doctrine where a corporation has a legitimate interest or expectancy in, and the financial resources to take advantage of, a particular business opportunity. *See Canion v. Texas Cycle Supply, Inc.,* 537 S.W.2d 510, 513 (Tex.Civ. App.—Austin 1976, writ ref'd n.r.e.). When a corporate officer or director diverts a corporate opportunity to himself, he breaches his fiduciary duty of loyalty to the corporation. A nonconsenting shareholder may challenge the breach of fiduciary duty. *See International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 576–77 (Tex.1963). Similarly, creditors may challenge the breach if the transaction is made to defraud creditors or while the corporation is insolvent. *See Zorn v. Brooks,* 125 Tex. 614, 618–19, 83 S.W.2d 949, 951 (1935); *Tigrett v. Pointer,* 580 S.W.2d 375, 385 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). In such cases, a court in equity may find that the officer or director holds the usurped opportunity as constructive trustee for the corporation. *Holloway,* 368 S.W.2d at 577; *Canion,* 537 S.W.2d at 513.

 Nevertheless, as with other acts involving interested directors, the shareholders of the corporation ordinarily can ratify the transaction, *e.g., Zorn,* 125 Tex. at 618–19, 83 S.W.2d at 951; *Canion,* 537 S.W.2d at 514; the ratification is valid unless the transaction itself violates a statute or public policy, *Pruitt v. Westbrook,* 11 S.W.2d 562, 565 (Tex.Civ.App.—Fort Worth 1928, no writ). Assuming fairness to the corporation and full disclosure of the di-

rector's action, only a majority vote is necessary. *Wiberg v. Gulf Coast Land & Development Co.,* 360 S.W.2d 563, 567 (Tex.Civ.App.—Beaumont 1962, writ ref'd n.r.e.). Yet, even when the transaction is detrimental to the corporation, no cause of action will lie if all of the shareholders have ratified the transaction. *See Wiberg,* 360 S.W.2d at 567; *cf. Gearhart Industries, Inc. v. Smith International, Inc.,* 741 F.2d 707, 720 (5th Cir.1984).

 The facts of this case do not warrant the imposition of a constructive trust. Even if Dyer and Graves breached their fiduciary duty to Safety by taking the purchase option in their own names, no party to this action can complain of the breach. There are no nonconsenting shareholders; Dyer and Graves held all of the shares of Safety. Moreover, although no formal shareholder action was taken, both were fully aware of their private ownership of the purchase option. Thus, their January 1982 agreement constituted informal ratification of the potential breach, foreclosing action by the corporation. Furthermore, the rights of Safety's creditors were not violated. Since the option never appeared as an asset on the company's books, creditors could not have relied on its existence in deciding to transact business with Safety. The challenged transaction did not cause Safety's subsequent Chapter 11 filing; rather, the insolvency resulted from later, wholly unrelated economic conditions. Moreover, the bankruptcy court specifically stated that no fraud was involved.

REVERSED and REMANDED.