**In re Donald Edward JACKSON aka/dba D.E. Jackson, CLU, RHU, LUTCF, dba Jackson Company and Jeanne Merle Brown Jackson, aka/dba Agent Service Company, Debtors.**

**ASSURANCE SYSTEMS CORPORATION, ASC Management, Inc., and Leslie C. Clary, Plaintiffs,**

v.

**Donald E. JACKSON and Jeanne Jackson, dba Agent Service Company, Defendants.**

**Bankruptcy No. 291–20207–7.
Adv. No. 291–2018.**

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

June 30, 1992.

Karl L. Baumgardner, Conant, Whittenburg, Whittenburg & Schachter, Amarillo, Tex., for plaintiffs.

William R. McKinney, Jr., Amarillo, Tex., for defendants.

## MEMORANDUM OF OPINION ON CORPORATE FIDUCIARY RESPONSIBILITY

JOHN C. AKARD, Bankruptcy Judge.

Leslie C. Clary, a stockholder of Assurance Systems Corporation (ASC), the principal stockholder of ASC Management, Inc. (Management), and a personal guarantor of some of the corporate obligations, brought this action in the nature of a stockholders' derivative suit against Donald E. Jackson and Jeanne Jackson (Jacksons) asserting that the Jacksons as officers and directors of both corporations breached their fiduciary duties thereby injuring the corporations.

### ISSUE

The question before the court is whether the transfer of all corporate assets by officers and directors of a corporation without stockholder approval to a proprietorship owned by the participating officers and directors is a breach of their fiduciary duty; whether the officers and directors are lia-

ble to the corporation for damages; and whether any such debt owed to the corporation is dischargeable in the officers' and directors' Chapter 7 proceeding. Under the facts presented in this case, the court finds that the Jacksons violated their fiduciary duty to ASC and Management, and are liable to the corporations. Further, the court finds these debts are not dischargeable under § 523(a)(4) of the Bankruptcy Code.[1]

## FACTS [2]

In 1978 Mr. Jackson formed ASC to engage in the insurance brokerage business. Through ASC, Mr. Jackson found insurance companies wishing to issue various types of policies. He then located licensed insurance agents who were willing to sell these policies. When a policy was sold, the agent received a commission and ASC received an "overriding commission." Generally, the commissions were larger in the first year, but they continued as long as the policy remained in force. ASC had a continuing obligation to provide service to the policyholders, the agents and the insurance companies.

In 1983 Mr. Clary joined ASC to set up a life insurance division. Mr. Clary owns 30,000 shares of the stock of ASC. Mr. and Mrs. Jackson held the remaining 60,000 shares, which are now owned by their Trustee-in-Bankruptcy.

Management was formed in early 1987. It entered into a management agreement with ASC to provide it all the employees, office space and overhead it needed. In exchange, ASC assigned all of its commissions to Management. Mr. Jackson acquired 50,001 shares of Management's initial stock issue.[3] Mr. Clary and the other stockholders, Bob Jackson (Mr. Donald Jackson's brother), Aaron Ratliff, Rose Shannon, and Ed Keifer each borrowed $15,000.00 which they contributed to the corporation in exchange for 9,999 shares of stock each. The corporations encountered financial difficulties and in the Summer and Fall of 1987, Bob Jackson, Mr. Ratliff, Ms. Shannon and Mr. Keifer left Management and Management acquired their stock. That stock was reissued to Mr. Jackson and Mr. Clary. Mr. Keifer also left in the Fall of 1987 but his stock was not purchased by Management and he remains a stockholder.

The business continued to deteriorate and Mr. Clary left the companies in September 1988. He retained his stock in both companies. Mr. Jackson operated both companies until Fall, 1990.

Mr. Jackson acknowledged that both ASC and Management were insolvent as of the end of 1987. His accountant stated that both of the corporations were in "very, very poor financial condition" at that time. They remained insolvent until the businesses were closed. Mr. Jackson talked to an attorney about bankruptcy for the corporation and personal bankruptcy in 1989. By August 1990 he expected that personal bankruptcy was looming in his future.

Even though Management was insolvent during 1990, the Jacksons drew large amounts from Management principally by having personal bills paid by the corporation. These draws were shown on the General Ledger of October 12, 1990 as "notes receivable" totalling $164,562.27. During 1990, Management did not pay its obligations, particularly notes to banks.

Mr. Jackson, as President and a director of the corporation, and Mrs. Jackson, as Vice President and a director, approved minutes of a called meeting of the Board of

---

**1.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code. This court has jurisdiction of this matter under 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(2), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(I).

**2.** The court adopts the Admitted and Stipulated Facts contained in the Pretrial Order filed by the parties and recites only the facts necessary to a decision. For clarity, additional facts are stated in appropriate places in this opinion.

**3.** The City National Bank of Amarillo, Texas had a lien on all of Mr. Jacksons's stock in Management. Mr. Clary purchased that stock at the bank's foreclosure sale in early 1991.

Directors of ASC dated September 31, [sic] 1990. The minutes recited that the corporation did not have funds to renew its professional liability insurance coverage and that it would not renew its insurance license when it expired on February 2, 1991. The minutes further recited that the corporation was not successful in selling its "block of business" and therefore

the block of business in effect with the various companies will be transferred to Jeanne Jackson, D.B.A. Agency Service Company, along with any first year or renewal commissions, whether vested or not vested, as consideration for assuming responsibility of servicing current agents, insureds, and companies for as long as such policies and contracts remain in force. This transfer will be through assignment of insurance company contracts and commission agreements directly to Jeanne Jackson as General Agent, or to Donald E. Jackson as General Agent if Jeanne Jackson is not accepted as General Agent by any such insurance company.

Minutes of a called meeting of the Board of Directors of Management dated September 31, [sic] 1990 were approved by Mr. Jackson as the sole member of the Board of Directors. The first resolution granted all of the furniture and equipment of the corporation not encumbered at First National Bank of Amarillo to Mrs. Jackson. The second resolution reads as follows:

Be it resolved the the [sic] corporation accepts the verbal notice from Assurance Systems Corporation's President, Donald E. Jackson, of that corporation's intent to discontinue the management agreement with this corporation effective today, September 31, [sic] 1990.

Thus the assets, but not the liabilities, of both corporations were transferred to Agent. At the time of the transfer, the liabilities of the corporations included notes to the First National Bank of Amarillo for $123,470.23 (plus accrued interest of $30,-706.20) and to City National Bank of Amar-

illo for $19,160.18. The transfer of assets was not made in the ordinary course of business and was made without approval of all of the stockholders.

In order to retain its insurance license, ASC needed to maintain an errors and omissions insurance policy. The policy was due to expire October 1, 1990 and renewal would have cost approximately $2,000.00. Since ASC had assigned all of its income to Management, Management would have had to provide the funds to purchase the policy. Mr. Jackson asserted that Management did not have sufficient monies for this purpose. He further stated that ASC's insurance license could not be renewed at its next annual renewal on February 2, 1991 because of the lack of the errors and omissions insurance. The evidence showed that Management received, through ASC commissions, $89,344.86 during the period January 1, 1990 through September 30, 1990, including $8,839.52 received in September. Income from the same sources received by Agent was $8,226.51 in October, 1990; $8,650.69 in November, 1990 and $7,533.40 in December, 1990. The Jacksons testified that Agent received between $7,000.00 and $8,000.00 per month income in 1991 until they filed personal bankruptcy on May 7, 1991.[4] Neither corporation is in bankruptcy.

Following the formation of Agent, Mr. Jackson actively solicited a number of insurance companies to cancel their general agency agreements with ASC and to enter into new general agency agreements with Mrs. Jackson. Agent conducted the same business as previously had been conducted by ASC and Management.

## STATUTES

§ 523. Exceptions to discharge.
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—

---

**4.** Mr. Jackson asserted that certain of the contracts represented his personal efforts and were not owned by ASC. These represent a relatively small portion of the amounts received by Agent, but the court finds they should be attributed to ASC because of the corporate opportunity doctrine.

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

## DISCUSSION

### Officers and Directors as Fiduciaries Under § 523(a)(4)

■ "A corporate officer is a 'fiduciary' of a corporation within the meaning of § 523(a)(4)...." *American Metals Corp. v. Cowley (In re Cowley)*, 35 B.R. 526, 528 (Bankr.D.Kan.1983). Section 523(a)(4) creates an exception to discharge for debts which are due to fraud or defalcation by the debtor while acting in a fiduciary capacity. *Pan–Western Life Ins. Co. v. Galbreath (In re Galbreath)*, 112 B.R. 892, 900 (Bankr.S.D.Ohio 1990). The imposition of a fiduciary obligation on a dominant or controlling stockholder or stockholders is not just for the protection of the corporation or its other stockholders, but extends to corporate creditors as well. *Pepper v. Litton*, 308 U.S. 295, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939). However, "the rights of creditors are involved only where there has been prejudice to the creditors, and prejudice arises only where the transaction is a fraudulent conveyance or one which led to corporate insolvency." *Martin v. Kagan (In re Tufts Electronics, Inc.)*, 746 F.2d 915, 917 (1st Cir.1984).

■ Even though a § 523(a)(4) fiduciary relationship is a question of federal law, state law is also an important factor in deciding a trust relationship exists. *Driggs v. Black (In re Black)*, 787 F.2d 503, 506 (10th Cir.1986)[5]. "To qualify under 11 U.S.C. 523(a)(4), the fiduciary duties must be based on an express or technical trust which existed prior to the act creating the debt without reference to a wrongful act." *Advance–United Expressways, Inc. v. Wines (In re Wines)*, 112 B.R. 44 at 45–46 (Bankr.S.D.Fla.1990).

### Officers and Directors as Fiduciaries Under Texas Law

■ Under Texas law a corporate officer or director owes a fiduciary duty to the corporation. *Faour v. Faour*, 789 S.W.2d 620 (Tex.App.—Texarkana 1990, writ denied). The officer or director owes the corporation and the stockholders a duty to act only in their best interests. *Hughes v. Houston Northwest Medical Ctr., Inc.*, 680 S.W.2d 838, 843 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), *cert. denied*, 474 U.S. 1020, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985). The relationship of officers and directors to the corporation is such that a constructive trust is imposed upon them. *Id.* at 843. Texas law imposes a duty on the officers and directors to exercise due care in the management of corporate affairs. *Meyers v. Moody*, 693 F.2d 1196, 1209 (5th Cir.1982), *cert. denied*, 464 U.S. 920, 104 S.Ct. 287, 78 L.Ed.2d 264 (1983). The *Moody* Court defined due care as "that degree of care which a person of ordinary prudence would exercise under the same or similar circumstances." *Id.* at 1209. Texas common law holds corporate officers and directors liable for any loss which the corporation may suffer as a result of their negligent mismanagement. *Id.* at 1215.

■ A corporate director's liability may be limited by the articles of incorporation, but the articles of incorporation may not limit the liability of a director for: (1) a breach of the director's duty of loyalty to the corporation or its stockholders or members; (2) an act or omission not in good faith that constitutes a breach of duty of the director to the corporation or an act or omission that involves intentional misconduct or a knowing violation of the law; (3) a transaction from which the director received an improper benefit, whether or not the benefit resulted from an action taken within the scope of the director's office; or (4) an act or omission for which the liability of a director is expressly provided by an applicable statute. Tex.Rev.Civ.Stat.Ann.

5. Although *Black* was abrogated by *Grogan v. Garner*, — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) because it used the clear and convincing standard of evidence, rather than the preponderance standard, the proposition cited remained unchanged. *Id.* 111 S.Ct. at 657–658, n. 9.

(T.B.C.A.)· art. 1302—7.06(B)(1), (2), (3), (4) (Vernon 1992).

### Interested Transactions

An officer and director is not prohibited from personally dealing with the corporation. However, any transactions between the officers or directors and the corporation are subject to strict scrutiny. The Texas Business Corporation Act requires that: (1) the material facts of the relationship or interest be disclosed and the transaction be approved by a majority of the disinterested directors; or (2) disclosure to the stockholders entitled to vote and the transaction is specifically approved in good faith by a stockholder vote; or (3) the transaction is fair to the corporation at the time it is authorized. Tex.Bus.Corp.Act. art. 2.35—1(A)(1), (2), (3) (Vernon 1992). The burden is on the officer or director to establish the fairness of the transaction. *Henger v. Sale*, 357 S.W.2d 774, 778 (Tex. Civ.App.—Waco 1962); *aff'd in part, rev'd in part on other grounds*, 365 S.W.2d 335 (Tex.1963).

Interested transactions include those in which directors personally profit from the transaction or those which deprive the corporation of a profit opportunity. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963). "Where a business opportunity is in the line of a corporation's activities, and is one in which the corporation has a legitimate interest or expectancy, the opportunity belongs to the corporation." *Canion v. Texas Cycle Supply, Inc.*, 537 S.W.2d 510, 513 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.). An officer or director may have a personal interest in the transaction and may profit personally from it, however, the profit interest of the officer or director must be secondary to the interests of the corporation. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d at 576. Buying or selling assets of the corporation by the corporate officer may make the officer or director an interested party. *Niagara Fire Ins. Co. v. Numismatic Co.*, 380 S.W.2d 830 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.). A director is interested if he transacts business in his director's capacity with a second corporation of which he is also a director or has a significant financial interest. *Reynolds–Southwestern Corp. v. Dresser Ind., Inc.*, 438 S.W.2d 135 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.). Further, an officer or director who transacts business for the corporation with a family member may find the transaction held to be voidable because of a personal interest in the transaction. *Davis v. Nueces Valley Irrigation Co.*, 103 Tex. 243, 126 S.W. 4 (1910). Ultimately the determination of whether a director is interested in a transaction is a question of fact. *Holloway*, 368 S.W.2d at 576.

> The relationship of officers and directors to a corporation is a fiduciary one imposing upon them the duty to exercise their powers as officers and directors solely for the benefit of the corporation and its stockholders. Implicit in such duty is that of not exercising their powers as officers and directors to serve their own personal interest at the expense of the corporation and its stockholders. Officers and directors have no more right to divert corporate opportunities and make them their own than they have to appropriate corporate property.

*Canion v. Texas Cycle Supply, Inc.*, 537 S.W.2d 510, 513 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.).

Applying Texas law to the case at hand, it is clear that as officers and directors, the Jacksons owed a fiduciary duty to ASC and Management. It is also clear that the transactions with Agent which transferred the corporate assets of ASC and Management fall within the definition of an interested transaction. There is no evidence the Jacksons complied with either T.B.C.A. art. 2.35–1 or art. 5.10. Further, the Jacksons retained an interest in the assets transferred to Agent. According to the resolutions contained in the minutes of the ASC director's meeting, "[t]his transfer will be through assignment of insurance company contracts and commission agreements directly to Jeanne Jackson as general agent, or to Donald E. Jackson as general agent if Jeanne Jackson is not accepted

as general agent by any such company." Even though the debtors claimed that Jeanne Jackson operated Agent as a sole proprietorship, Donald Jackson had an interest in Agent due to the community property laws of Texas. Tex.Fam.Code Ann. § 5.01 (Vernon 1975), § 5.02 (Vernon Supp. 1992). In addition, letters written by Mr. Jackson to several of the insurance companies made clear that he would continue to participate Agent's business.

### Duty to Stockholders in Texas

In Texas, officers and directors of a corporation owe a fiduciary duty to the corporation. However, there is generally no fiduciary obligation owed to individual stockholders. The duty is to the stockholders as a group which collectively make up the corporation. Because there is no duty to individual stockholders, Mr. Clary could not maintain a suit in his own name, as the cause of action belongs to the corporation. *Faour v. Faour*, 789 S.W.2d at 622. Therefore, the corporation is the proper party to bring suit. An action brought by the corporation helps ensure that any recovery is available for corporate creditors or for distribution to all the stockholders. *Schoellkopf v. Pledger*, 739 S.W.2d 914, 918 (Tex.App.—Dallas 1987), (citation omitted), *rev'd on other grounds and remanded*, 762 S.W.2d 145 (Tex.1988), on remand, 778 S.W.2d 897 (Tex.App.—Dallas 1989, writ denied). For a stockholder to recover individually, the stockholder must prove violation of a duty owed directly to him by the manager. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex.1990).

### Derivative Suits in Texas

[22, 23] In Texas, T.B.C.A. art. 5.14 governs stockholder derivative suits. *Atkinson v. Reid*, 625 S.W.2d 64, 67 (Tex. App.—San Antonio 1981, no writ). The individual stockholder may bring a stockholder derivative suit, but in doing so the suit must be brought in the corporation's name. *Empire Life Ins. Co. of America v. Valdak Corp.*, 468 F.2d 330, 335 (5th Cir. 1972). Under T.B.C.A. art. 5.14(A)(1) (Vernon 1980), a derivative suit is one brought in the right of a domestic or foreign corporation. As a prerequisite, the stockholder must state first that he was a record or beneficial stockholder when the injury occurred (or his shares or interests thereafter devolved upon him by operation of law from a person who was such an owner at that time). *Id.* at art. 5.14(B)(1). *See also Faour v. Faour*, 789 S.W.2d at 622. Second, the stockholder must allege the efforts made to have the suit brought for the corporation by the corporation's board, or the stockholder may allege that the demand or efforts to make a demand on the corporation were futile. Tex.Bus.Corp.Act. art. 5.14(B)(2)(b) (Vernon 1980); *Dodson v. Kung*, 717 S.W.2d 385, 390 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

### Proper Party to Bring Suit

The Jacksons claimed that Mr. Clary is not the proper party to bring this suit. However, the parties stipulated that Mr. Clary is the current majority stockholder and president of Management and a minority stockholder and president of ASC. In addition, Mr. Clary was a stockholder of both corporations on September 31 [sic], 1990, the date on which the transfer to Agent occurred. This satisfies the requirements of T.B.C.A. art. 5.14(B)(1).

There is nothing in the pleadings which addressed the T.B.C.A. art. 5.14(B)(2)(b) requirement of stating with particularity the efforts of the plaintiff to have the suit brought for the corporation by the board of directors or the reasons for not making such an effort. In *Gearhart Industries,* the court dealt with a stockholder derivative suit and the failure on the part of the stockholder group to comply with the provisions of T.B.C.A. art. 5.14. Instead of focusing on the pleading defect the court addressed the merits stating: "[W]e chose to address the merits of its claim that fiduciary duties have been breached because of the possibility that Smith may amend its pleadings to comply with Article 5.14." *Gearhart Ind. Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 722 (5th Cir.1984).

In the instant case, attempts by Mr. Clary to induce the corporations to bring this suit would have been futile. At the time of the transfer Mr. Jackson was the sole director of one of the corporations, and the Jacksons were the sole directors of the other. The Jacksons were not only in control, but they were also the parties who initiated and benefitted by the transaction of which Mr. Clary complains. The court finds that Mr. Clary is a proper party to bring suit on behalf of ASC and Management; particularly since the only other possible parties would have been the Jacksons. However, Mr. Clary is not entitled to an individual recovery other than that based on his ownership of shares in the corporation. *Schoellkopf, supra.*

The Jacksons also complain that the Chapter 7 Trustee, the holder of the Jackson's shares of ASC, was not a party to this litigation and that the Trustee cannot delegate his authority to prosecute the claim. However, T.B.C.A. art. 5.14 does not require that the Trustee be a party. Rather, the statute requires only that the plaintiff have ownership of the stock at the time the transaction took place or the time that the injury occurred. Mr. Clary satisfies these requirements.

### Burden on Officer/Director to Prove Corporate Inability

The burden is on the officer or director to plead and prove that the corporation did not have the ability to take advantage of the business opportunity. *Huffington v. Upchurch,* 532 S.W.2d 576 (Tex.1976). The Jacksons seek to rely on their claim that they were acting in good faith and without corrupt motive. However, it is not necessary for Mr. Clary to prove that the Jacksons intended to harm the corporations. *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.),* 760 F.2d 121, 125 (6th Cir.1985). It is what the Jacksons actually did in their roles as officers and directors and the violation of their fiduciary duty to the corporation that is determinative. It is for the Jacksons to prove the corporations' lack of ability. *Huffington, supra.*

In the present case Mr. Jackson's statement that the corporation did not have the $2,000 to pay for renewing the insurance policy was the only evidence supporting the corporation's inability to take advantage of the opportunity. Yet, copies of checks indicated that corporate funds in excess of $7,000 were paid during the same time period for Mr. and Mrs. Jackson's personal bills. The court finds that the corporation did have the ability to take advantage of the opportunity. The Jacksons had a fiduciary duty to the corporation as officers and directors, not to participate in the transfer of corporate assets to Agent, not to benefit personally from the transfer, and not to use corporate funds for payment of personal bills.

### Constructive Trust Imposed

Under Texas law, a corporate officer or director owes a fiduciary duty to the corporation. *Faour v. Faour,* 789 S.W.2d at 621. In the present case, the fiduciary relationship already existed under state law because of the Jacksons' positions as officers and directors of the corporations. It was not created by the transaction. However, a constructive trust arose when the Jacksons transferred corporate assets to Agent. The *Canion* Court stated that "[a]n officer or a director who diverts the opportunity and embraces it as his own is chargeable as a constructive trustee for the benefit of the corporation and holds all the profits and benefits received therefrom for the corporation." *Canion v. Texas Cycle Supply, Inc.,* 537 S.W.2d at 513.

### Exceptions to Discharge Under § 523(a)(4)

A discharge under § 727 does not discharge an individual debtor from any debt created by fraud or defalcation while acting in a fiduciary capacity. § 523(a)(4). In order to hold the debt nondischargeable, there must be a showing of a fiduciary relationship and a defalcation. Whether a defalcation occurred is a fact specific question and requires an examina-

tion of the total circumstances. *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 254–57 (6th Cir.1982). Courts have found defalcation where an officer or director of a corporation has misused his position to gain a personal benefit at the expense of the corporation or corporate creditors. *John P. Maguire & Co. v. Herzog*, 421 F.2d 419, 422 (5th Cir.1970).

In *Advance–United Expressways, Inc. v. Wines (In re Wines)*, 112 B.R. 44 (Bankr. S.D.Fla.1990), the court found that the debtor was a fiduciary because of his position as officer and chairman of the board of the corporation. In addition, the court held that a personal sales agreement the debtor entered into with a competitor corporation while in his position as chief executive officer constituted a defalcation under § 523(a)(4). The *Wines* Court noted a Minnesota statute under which an officer of a corporation is a fiduciary. The statute created a fiduciary duty within the meaning of § 523(a)(4). The court found that because the debtor owed a fiduciary duty to the corporation and had misused his position, a defalcation under § 523(a)(4) had occurred.[6]

It has been found that defalcation is willful neglect of duty even where not accompanied by fraud or embezzlement. *Moreno v. Ashworth (In re Moreno)*, 892 F.2d 417 (5th Cir.1990). Moreno, as an officer of one corporation, directed a transfer of corporate funds to other companies in which he had an interest. The court determined that the officer's fiduciary duty included the responsibility not to lend the corporation's money to himself or to other businesses controlled by him on less than an arm's length basis. *Id.* at 421. Because of these activities the court found the debt was non-dischargeable under § 523(a)(4).

### *Standard of Proof Required Under § 523(a)*

█ The United States Supreme Court stated that a preponderance of the evidence is the standard of proof for § 523(a) dischargeability exceptions. The debtor has

no constitutional or fundamental right to a discharge in bankruptcy. A debtor's interest in a discharge is insufficient to require standards greater than preponderance. *Grogan v. Garner*, ⸺ U.S. ⸺, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### *Damages for Breach of Fiduciary Duty Under § 523(a)(4)*

█ In *Meyers v. Moody*, 693 F.2d 1196, 1215 (5th Cir.1982), the Fifth Circuit found that under Texas common law, directors were liable to a corporation for "any loss it may suffer as a result" of negligent mismanagement. *Id.* at 1215. The same applies if the officer or director breached their fiduciary duty to the corporation. *Id.* at 1209. The corporation is entitled to recover all damage sustained by it including lost profits. *CST, Inc. v. Mark*, 360 Pa.Super. 303, 310, 520 A.2d 469, 472 (1987). *See also Advance–United Expressways, Inc. v. Wines (In re Wines), supra.*

### ·*Damages Claimed*

█ The evidence showed that the Jacksons drew $164,562.27 from Management during 1990 at a time when the corporation was insolvent and not paying its bills. The Jacksons had a fiduciary duty to manage the corporation for the benefit of the shareholders (including the payment of corporate obligations) but it appears that they set upon a course of looting the corporation for their personal benefit. The draws substantially exceeded draws made in other years and were excessive. Since no salary was paid to Mr. Jackson, Mr. Clary suggests that a reasonable salary be allowed to Mr. Jackson for the first nine months of 1990. He suggests an allowance based on an annual salary of $40,000 as determined from previous stockholder distributions for the years 1988 and 1989. The 1988 distribution was $50,136.05 and in 1989 it was $40,883.15. Based on these figures, Mr. Clary contends that $40,000 would be a fair annual salary. Following this reasoning, Mr. Jackson would have received $30,000 for the first 9 months of 1990. Deducting

---

**6.** The Florida court applied Minnesota law because the debtor was the CEO of a Minnesota

corporation when the breach of fiduciary duty occurred.

this from the amount of the "notes receivable" account leaves a total of $134,562.27 due to Management. The Jacksons claim that Mr. Clary cannot complain of Mr. Jackson's conduct because, in the past, Mr. Clary received similar stockholder distributions carried on the books as notes receivable. The court finds no support for this theory. At issue here is the fiduciary duty the Jacksons owed to the corporations after Mr. Clary left the corporations.

The Jacksons operated Agent for approximately seven months between the transfers to Agent and the filing of the Jacksons' bankruptcy. The evidence showed that the income to Agent during that time from assets transferred to it by ASC was $7,000.00 to $9,000.00 per month. Mr. Clary seeks recovery of $7,000.00 per month or a total of $49,000.00 from the Jacksons. By the corporate resolutions of September 31 [sic], 1990, the management agreement between ASC and Management was canceled, therefore the income received by Agent was income belonging to ASC and this portion of the judgment should be in favor of ASC.

The Jacksons claim that the $49,000 should not be allowed because Mr. Clary failed to take into account overhead and operating expenses which were incurred by Agent during the seven-month period. Because of the fraudulent nature of the Jacksons' breach of their fiduciary duty to the corporations, they should be held responsible for the gross amount of ASC's funds which they received. Indeed, Mr. Clary's request for $7,000.00 per month is on the low end of the receipts and left Agent with more than $1,000.00 in operating expenses in most months. *See Meyers, supra* and *Canion, supra.*

## CONCLUSION

Donald Edward Jackson and Jeanne Merle Brown Jackson owe a debt of $134,-562.27 to Management, and a debt of $49,-000.00 to ASC. The Court finds these

**7.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to

debts are not dischargeable under § 523(a)(4).

JUDGMENT ACCORDINGLY[7].